# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID ADKINS,

*Plaintiff,*

and

BERNARDO ALVAREZ; RAUL
ALVAREZ; DANIEL ATENCIO; ROBERT
AUXIER; ERNESTO BARRAZA; JAMES
BENTSON; DANIEL BLACK; VIRGINIA
BRANDON; BRYANT; ARMANDO
BUSTAMENTE, JR.; EDWARD CESENA,
JR.; ARTHUR CENA; CALLEN
CAMPBELL; LILA DIAZ; DORENE
DORIC; JEFF DUNNE; JOSE ESPINOZA;
ANDREW FINLEY; MICHAEL
FORNASERI; DANIEL GALLEGOS;
DAVID GARCIA; DARVEY GUIDRY;
MARTIN GONZALEZ; FERNANDO
GONZALEZ; RICHARD HEITZWEBEL;
CHARLES HEARN; ROSEMARY JAIME;
PATRICK KING; KENNETH LAMMON;
JACKIE LOPEZ; CECILIA LOZANO;
BARBARA LUTE; FRANCISCO MARIN;
RAUL MATA; KATHARINE MIRANDA;
PETER MILLER; LINDA MORALES;
WILLIAM MUELLER, JR.; MATTHEW
MONTGOMERY, JR.; EARL PEDFORD;
VICTOR PAZ; JOSE PEREZ; SEFO
PURCELL; MARTIN RAMOS; LEO RUIZ
MICHAEL RODRIGUEZ; MARIE RILEY;
BLAINE ROSKELLEY; RITCH SMITH;
SAMUEL SALDANA;

No. 06-56005

D.C. No.
CV-98-00979-AHS

OPINION

5701

RICHARD SARMAST; THOMAS SERVIA;
MARTIN SEPULVEDA; KATHY
SEWARD; RICHARD SHERMAN; RITA
SLAGLE; JULIE TOONE; HIRAM
TRAVIS; JOHN VANDYKEN; JOSE
VARGAS; TED WIGHTMAN; DARRYL
WILLIAMS; GERALD WILDERMUTH;
ALBERT ZAMORA,
                    *Plaintiffs-Appellants,*

                    v.

ED MIRELES; HARRY ASHLEY;
TEAMSTERS LOCAL 952, a labor
organization,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
February 13, 2008—Pasadena, California

Filed May 16, 2008

Before: Betty B. Fletcher, Daniel M. Friedman,* and
N. Randy Smith, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The Honorable Daniel M. Friedman, United States Senior Circuit
Judge for the Federal Circuit, sitting by designation.

## COUNSEL

Lee A. Wood (argued), Raymond E. Brown, Lee A. Wood & Associates, P.C., Santa Ana, California, for the plaintiffs-appellants.

Fern M. Steiner (argued), Thomas Tosdal, Tosdal, Smith, Steiner & Wax, San Diego, California, for the defendants-appellees.

## OPINION

B. FLETCHER, Circuit Judge:

This appeal arises out of a union-negotiated collective bargaining agreement ("CBA") governing employees of Lucky Stores, Inc.'s ("Lucky") general merchandise warehouse. David Adkins and other former employees at Lucky's Fullerton, California warehouse (collectively, "Appellants"), all members of Teamsters Local 952 ("the Union"), appeal the district court's judgment, following a partial summary judgment and jury trial, in favor of the Union, Ed Mireles, secretary-treasurer of the Union, and Harry Ashley, president of the Union (collectively, "Appellees").

Appellants allege breach of the duty of fair representation, breach of contract, negligent misrepresentation, fraud & deceit, intentional infliction of emotional distress, violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and conspiracy to commit RICO violations. The district court granted summary judgment in favor of Appellees on all but one claim, finding the other claims preempted by federal law. The remaining claim, for breach of the duty of fair representation, was decided after an 8-day jury trial.[1] Appellants contend the district court erred by finding preemption as to the dismissed claims and as to the claim that went to trial by granting a motion *in limine* to exclude evidence of a 1985 incident in which two or more of the Appellants burned their teamster jackets. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

We hold that the district court did not err in holding that federal law preempts Appellants' breach of contract, breach of covenant of good faith and fair dealing, misrepresentation, and intentional infliction of emotional distress claims because each implicates the duty of fair representation. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) (holding that a union acting in its representative capacity owes a duty of fair representation to those on whose behalf it acts). The district court did not err in finding that the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185 preempts Appellants' fraud and deceit claim, because the claim cannot be maintained without the court interpreting the provisions of the CBA. The Appellants' RICO claims are preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959), because Appellants alleged an unfair labor practice—bargaining in bad faith—which is prohibited by the National Labor Relations Act ("NLRA") §§ 7 and 8, 29 U.S.C. §§ 157 and 158, and thus under the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). Lastly,

---

[1]This claim too is governed by federal law but may be tried in federal court. *See Vaca v. Snipes*, 386 U.S. 171, 179 (1967).

the Appellants failed to perfect their challenge to the district court's evidentiary decision to exclude evidence regarding the jacket-burning incident: while Appellants proffered this evidence *in limine,* they did not attempt to introduce the evidence at trial.

## I.  Factual Background and Procedural History

In 1985, a strike by Lucky employees, including members of the Union, led to a settlement which left some warehouse employees unsatisfied. In response to the settlement of that strike, some employees at the Fullerton warehouse, including at least two of the Appellants in this case, burned their teamster jackets in protest on national television. Appellants allege that as a result of this incident, Mireles harbored animosity toward the Fullerton warehouse employees for the next decade, then exacted revenge during a September 1994 Union-initiated negotiation with Lucky over the terms of a CBA, which was to cover the Fullerton warehouse, as well as others in Buena Park and Irvine, for the years 1994 to 1998.

Appellants sought protective language in the CBA that would allow them to "follow their product," that is, to obtain an assurance from Lucky that if the Fullerton warehouse was closed and the product transferred, Appellants would continue to be employed by Lucky and transferred to the warehouse that received the transferred product. Mireles negotiated with Lucky—in the absence of other Union business agents who were present at prior negotiations—and secured this protective language in the CBA for employees of the Buena Park and Irvine warehouses but not for employees of the Fullerton warehouse. Lucky planned to close down the Fullerton facility in 1998 without allowing transfers to the larger planned replacement warehouse. Lucky gave the Union jurisdiction over this new warehouse, which opened in La Habra, near the old Fullerton facility, in 1996. Appellants claim Mireles represented to them, contrary to the actual terms of the CBA, that they could follow their product, and that when Appellants

were terminated from their employment at the Lucky warehouse in Fullerton in September 1998, Mireles refused to pursue their grievances. In October 1998, Appellants filed the present complaint in Orange County Superior Court; it was later removed to federal district court.

Appellants alleged that Appellees colluded with Lucky to persuade the Appellants to accept a CBA that was substantially less protective of Appellants' rights than was represented to them. Appellants further maintained that Appellees were motivated by the Union's desire to secure Lucky's prospective cooperation in becoming the labor representative of a larger number of Lucky's employees, and by Mireles's long-harbored animosity toward Appellants. Appellants contended that the Union negotiated a secret deal with Lucky, which was not disclosed to them; that they ratified the 1994-98 CBA because they relied on material misrepresentations by the Union that Fullerton workers would be allowed to follow their product; and that the Union failed to properly represent them both in the 1994 CBA negotiations and 1998 negotiations about Lucky's closure of the Fullerton facility at which they worked.

In response to Appellees' motion for summary judgment, the district court dismissed with prejudice the breach of the duty of fair representation claim to the extent it was asserted against individual Appellees. It reasoned that LMRA § 301 exempts union agents from claims of any nature related to the CBA and the collective bargaining process.[2] *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 249 (1962). Appellants do not challenge this portion of the district court's order. The district court held that the other claims save one were preempted by federal labor laws and dismissed them with prejudice. Appellants appeal these rulings.

---

[2]LMRA § 301 provides that "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties[.]" 29 U.S.C. § 185.

The case proceeded to jury trial on Appellants' remaining claim that the Union breached its duty of fair representation by acting in an arbitrary, discriminatory, or bad faith manner towards the Appellants. The jury returned a verdict for Appellees, finding that they did not breach their duty of fair representation.

Appellants allege that their jury trial was prejudiced by the district court's grant of a motion *in limine* to exclude evidence regarding the 1985 jacket-burning incident. In arguing against the motion *in limine*, Appellants' counsel represented to the court that a number of Appellants were going to testify that Mireles thought that this incident, which was shown nationally on television, set back the Union's effort and was a major embarrassment to him. Appellants allege that this incident along with others in the early 1990s motivated Mireles and the Union to act against them. Unpersuaded by Appellants' argument, the court granted the motion without prejudice, prohibiting reference to the jacket burning incident without further leave of the court, but allowing Appellants to develop a written offer of proof, outside the presence of the jury, to include evidence regarding the incident. Appellants did not make an offer of proof. Appellants timely appealed this evidentiary ruling and the partial summary judgment.

## II.   Preemption

A ruling on a motion for partial summary judgment merges with the final judgment and is reviewable on appeal from the final judgment. *Stewart Title & Trust of Phoenix v. Ordean*, 528 F.2d 894, 897, fn.1 (9th Cir. 1976). We review an order granting summary judgment de novo. *See Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). On review, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.

*See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004).

In *Garmon*, the Court held that states may not regulate activity that is actually or arguably protected or prohibited by the NLRA: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Garmon*, 359 U.S. at 244. The *Garmon* doctrine holds that the national interest in having a consistent body of labor law requires that the NLRB have exclusive jurisdiction to regulate activity that could arguably constitute unfair labor practices.[3]

The district court explained, however, that in cases where it cannot be fairly inferred that Congress intended exclusive jurisdiction to lie with the NLRB, the *Garmon* doctrine has not been rigidly applied. *Vaca v. Snipes*, 386 U.S. 171, 179 (1967). Some causes of action have been found cognizable in court despite technically implicating NLRA § 7 or § 8, including actions under LMRA § 301 for breach of collective bargaining agreements and actions by workers against their unions for breach of duty. However, both of these recognized exceptions also implicate separate preemption principles because they displace state law by federal law.

[1] LMRA § 301 preempts state-law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract[.]" *Allis-Chalmers Corp. v. Luack*, 471 U.S. 202, 220 (1985). More

---

[3]As the district court observed, among the several types of preemption commonly found in the labor-law arena, the preemption of state and federal judicial power to adjudicate claims arguably encompassed by § 7 or § 8 of the NLRA is even more "dramatic" than the routine displacement of state law by federal law through the operation of the Supremacy clause. Dist. Ct. Op. at 3-4.

specifically, LMRA § 301 will operate to preempt a state-law claim whose resolution depends upon the meaning of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-406 (1988) ("If the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.") LMRA § 301 extends not only to "claims founded directly on rights created by collective bargaining agreements, [but] also [to] claims which are substantially dependent on analysis of a collective bargaining agreement." *Hyles v. Mensing*, 849 F.2d 1213, 1215-16 (9th Cir. 1988) (internal citations omitted). This interpretation minimizes the danger that contract terms "might have different meanings under state and federal law[,] . . . inevitably exert[ing] a disruptive influence upon both the negotiation and administration of collective agreements." *Allis-Chalmers* 471 U.S. at 210-11.

**[2]** The federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. State law may "constitute an impermissible obstacle to the accomplishment of purposes of Congress by regulating conduct that federal law has chosen to leave unregulated." *Condon v. United Steelworkers of Am.*, 683 F.2d 590, 594 (1st Cir. 1982). The doctrine of fair representation serves both as a limited check on the arbitrary exercise of union power and, through its limitations, allows unions wide latitude in effectively serving the interests of the bargaining unit. *See United Steel Workers of Am. v. Rawson*, 495 U.S. 362, 374 (1990). To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship. *Id.* Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining

representative, such as an express provision of the collective bargaining agreement or a collateral contract. *Id.*

In challenging the district court's holding that their claims were preempted by federal labor laws,[4] Appellants maintain that because the Union secretly entered into a side-deal with Lucky, it infringed substantive rights which gave rise to several state law claims. We address each claim in turn.

## 1) BREACH OF CONTRACT CLAIM

**[3]** The district court held that the breach of contract claim was preempted as it implicated the statutory duty of fair representation. It concluded that Appellants sought to enforce duties that Appellees owed as union representatives, namely the duty to represent them in good faith as their exclusive bargaining representative. Appellants' complaint was indeed that Appellees breached their promise, as expressed in the Teamsters International Constitution and in Union by-laws, to represent them in good faith as their exclusive bargaining representative. Appellants made no showing of additional duties beyond the normal incidents of the union-employee relationship. *United Steel Workers*, 495 U.S. at 374. They did not show, for example, an express provision of the CBA or a collateral contract that imposed additional enforceable duties upon the Union. *Id.* Accordingly, we conclude that the district

---

[4]Appellants also argue, relying on *Lingle*, 486 US at 405-6, that these claims are not preempted because they can be resolved without interpretation of the labor contract itself. They assert that the Union breached its duty of fair representation because those actions were so far outside the "wide range of reasonableness" generally afforded to a union's collective bargaining performance that they are wholly "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation omitted). We do not reach this argument because we conclude that each one of Appellants' claims is directly preempted because each implicates the duty of fair representation or is preempted by statute. Appellants may not escape federal labor law preemption by "artfully" pleading their claims, avoiding references to preemptive federal law. *See Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988).

court did not err in finding that the statutory duty of fair representation displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. *Id.*

## 2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

**[4]** Appellants claim that Appellees tortiously breached their contractual obligation to represent them fairly by failing to exercise their discretion with complete good faith and honesty. The district court concluded that this claim was in effect a claim for breach of duty of fair representation, as defined in *Vaca*. Accordingly, it found that this claim was also preempted. *See Vaca*, 386 U.S. at 177. We conclude the district court did not err in finding preemption because we also conclude that this state law claim seeks to enforce duties that Appellees owe in their capacity as union representatives. *Ford Motor Co.*; 345 U.S. at 337; *United Steel Workers*, 495 U.S. at 374.

## 3) NEGLIGENT MISREPRESENTATION CLAIM

**[5]** Appellants claim that Appellees negligently misrepresented to them that Appellants would be able to follow their work under the terms of the CBA if the Fullerton warehouse closed down. The district court held that this claim was also preempted under LMRA § 301 as a claim involving the duty of fair representation. It reasoned that Appellees' alleged failure to accurately describe the provisions of the CBA did not violate a general duty of care and that if Appellees breached any duty at all, it was one grounded in their special status as union representatives. *Id.* We also so conclude. Because Appellants failed to show a separate, independent duty upon which to base this claim, we conclude that the district court did not err in its finding of preemption.

## 4) FRAUD AND DECEIT CLAIM

Appellants' fraud and deceit cause of action stems from the same facts as their negligent misrepresentation claim and adds the charge that the erroneous representations were knowingly made with an intent to deceive. The district court concluded that this fraud and deceit claim was preempted by LMRA § 301. It reasoned that in order to assess the truthfulness of the Appellees' alleged representations concerning the content of the CBA, the court would have to interpret provisions of the CBA itself. Appellants argue that LMRA § 301 preemption should not apply to this or any of their state law claims because those claims do not depend on the meaning of the CBA, but rather depend on whether Appellees engaged in wrongdoing with respect to the negotiation and ratification of the CBA.

**[6]** Not every dispute concerning a provision of a collective bargaining agreement is preempted by LMRA § 301. *Allis-Chalmers*, 471 U.S. at 211. Preemption analysis should take place on a case by case basis. *Lingle*, 486 U.S. at 405-406. In this case, however, we conclude that resolution of Appellants' claim depends upon the meaning of the CBA because the central factual allegation relates to whether Appellees represented falsely the CBA itself, regardless of the negotiation or ratification process. Accordingly, we conclude the district court did not err in its finding of preemption. *Atkinson*, 370 U.S. at 249. We do not reach the question of whether this claim would also be preempted by the duty of fair representation.

## 5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Appellants' intentional infliction of emotional distress claim asserts that Appellees' alleged betrayal constituted extreme and outrageous conduct calculated to cause severe emotional harm. The district court found that this conduct was inseparable from Appellees' performance of their role as col-

lective bargaining representatives. The district court noted that the duty of fair representation "occupies the field" of regulation affecting how a union must relate to its members in the process of carrying out its representational functions. It reasoned that a great risk exists that a federal court's grant of relief under a state-law tort claim designed to enforce minimal standards of decency would regulate the manner in which a union interacts with its members in the course of performing its duties as collective bargaining representative in a way "that federal law has chosen to leave unregulated." *Condon*, 683 F.2d at 594 (citing *Teamsters v. Morton*, 377 U.S. 252, 261 (1964)).

**[7]** We also conclude that Appellants' intentional infliction of emotional distress claim is inextricably linked to Appellee's performance of duties owed in their capacity as union representatives. Because the duty of fair representation occupies the field of regulation of union-member relations when a union carries out its representational functions, we conclude that the district court did not err in its holding of preemption.

## 6) RICO CLAIMS

**[8]** Appellants sought damages based on alleged violations of 18 U.S.C. §§ 1341 and 1342, for mail and wire fraud, and a conspiracy to commit the relevant predicate acts. The district court held that although these civil RICO causes of action arise under federal law and are not displaced by federal labor law, the claims were nonetheless preempted under *Garmon*. 359 U.S. at 244-5. Under *Garmon*, state and federal courts are deprived of the power to grant relief against conduct that is arguably prohibited by NLRA § 7 or § 8 provisions governing unfair labor practices, unless redress is sought under one of its recognized exceptions (e.g. LMRA § 301 or the duty of fair representation). The district court concluded that because Appellees' allegedly fraudulent conduct is arguably an unfair labor practice—bargaining in bad faith—that a civil RICO action was an improper vehicle for seeking redress.

Appellants argue that *Garmon* preemption should not apply to this or any of the state law claims for the same reason they argue that LMRA § 301 preemption should not apply: because those claims do not depend on the meaning of the CBA. Appellants maintain that their state law claims do not concern conduct arguably subject to NLRA § 7 or § 8 provisions. We conclude, however, that Appellants' RICO claims rest on their allegation that the Union had bargained in bad faith with Lucky. Because bargaining in bad faith is an unfair labor practice prohibited by NLRA §§ 7 and 8, and a consistent body of labor law requires that the NLRB has exclusive jurisdiction to regulate activity that could arguably constitute unfair labor practices, we defer to the exclusive competence of the NLRB to adjudicate the matter. *Garmon*, 359 U.S. at 244-45. Accordingly, the district court did not err in finding that Appellants' civil RICO claims were preempted.

## III.   Evidentiary Ruling

**[9]** Appellants challenge the district court's exclusion of certain evidence regarding an incident involving the burning of union jackets. After the court granted the motion to exclude the evidence without prejudice, it made clear the ruling was tentative and allowed Appellants to make a later request, outside the presence of the jury, to include evidence regarding the incident. The court explained that it would allow Appellants to develop a written offer of proof because it still lacked specific facts to support a finding that the incident was as significant as Appellants claimed. The court added that in the absence of additional evidence, the incident sounded too remote and insignificant to allow. Appellants failed to make the solicited offer of proof. So, while Appellants proffered evidence *in limine,* they did not attempt to make an offer of proof or introduce evidence at trial. The district court did not have the opportunity to issue a final order.

**[10]** Rulings on *in limine* motions are not final appealable orders under 28 U.S.C. § 1291. *See Coursen v. A.H. Robins*

*Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir. 1985). Thus, in order to appeal an issue on which the district court ruled *in limine*, a party must first receive a final ruling on the issue. "[W]here a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial." *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) (quoting *Walden v. Georgia-Pac. Corp.*, 126 F.3d 506, 518 (3rd Cir. 1997)). Because Appellants failed to make an offer of proof, they cannot challenge the exclusion of that evidence on appeal. *Id.*

**AFFIRMED.**