CHRISTEN, Circuit Judge,
dissenting:
The district court recognized that the underlying issue in Masserant’s claim is not what benefits the collective bargaining agreement provides, it is whether the terms of the parties’ CBA violate the Washington Family Care Act. Masserant argues that the WFCA creates “non-negotiable rights” that Alaska Airlines and AFA could not bargain away. To resolve Masserant’s claim, the CBA need not be interpreted. The parties agree that the CBA identifies circumstances under which accrued and scheduled leave may be used, and using scheduled leave to care for an employee’s sick child is not one of those circumstances. In my view, the district court correctly ruled that the right Mas-serant asserts arises from the WFCA, if it exists at all. Masserant’s claim is not dependent upon the CBA; it is not preempted; and she should be allowed to pursue it in the state administrative and judicial process. For these reasons, I respectfully dissent.
I. Masserant’s claim is not preempted by the Railway Labor Act.
Masserant filed a Personal Leave Complaint with the Washington Department of Labor & Industries in which she argued that the terms of the parties’ CBA violate the WFCA. She prevailed at the first level of the Department’s administrative process and the Department issued a $200 notice of infraction to Alaska Airlines for denying her leave request. Alaska Airlines filed this action in federal court seeking a declaration that Masserant’s claim and the WFCA choice-of-leave provisions are preempted by the Railway Labor Act (RLA). See 45 U.S.C. § 151-188; Wash. Rev. Code § 49.12.265-.295. The district court agreed with Masserant, her union, and the Department of Labor & Industries that the RLA does not preempt state enforcement of the WFCA because Masserant’s WFCA claims are independent of the parties’ CBA.
On appeal to our court, Alaska Airlines argues that the RLA requires Masserant to litigate her dispute via the mandatory grievance procedures outlined in the CBA, rather than through state administrative procedures. The RLA requires that minor disputes, such as the one at issue here, must first be addressed in the carrier’s internal dispute resolution process and, if not resolved there, presented to an Adjustment Board comprised of workers and management.[1] See 45 U.S.C. § 184; Atchi *1095 son, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 563, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). The RLA preempts state law claims that interfere with the Adjustment Board’s exclusive jurisdiction to resolve minor disputes. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253, 114 act 2239, 129 L.Ed.2d 203 (1994). If a claim is based on rights independently conferred by state law, not by a CBA, it is not preempted. See Livadas v. Bradshaw, 512 U.S. 107, 125, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). We examine Masserant’s claim closely because the Supreme Court has cautioned that federal laws “cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law.” Livadas, 512 U.S. at 123, 114 S.Ct. 2068.
In Burnside v. Kiewit Pacific Corp., our court articulated a two-part test for determining whether a state law claim that appears to implicate a collective bargaining agreement is preempted by § 301 of the Labor Management Relations Act (LMRA). See 491 F.3d 1053. The Burnside test is critical to the outcome of this appeal because the Supreme Court has held that the preemption standard under LMRA § 301 is the same one that applies to the RLA. See Hawaiian Airlines, 512 U.S. at 260, 114 S.Ct. 2239. Under Burnside, the court first inquires whether the asserted cause of action involves a right conferred on the employee by virtue of state law or by the terms of a CBA. Burnside, 491 F.3d at 1059. “If the right exists solely as a result of the CBA, then the claim is preempted, [] our analysis ends there,” and the claim must be resolved under the RLA’s mandatory arbitral mechanisms. Id; see Hawaiian Airlines, 512 U.S. at 252, 114 S.Ct. 2239 (“[Claims preempted under the RLA] must be resolved only through the RLA mechanisms, including the carrier’s internal dispute-resolution processes and an adjustment board established by the employer and the unions.”). Even if the asserted right does exist independently of the CBA, at step two the court must “consider whether it is nevertheless ‘substantially dependent on analysis of a collective-bargaining agreement.’ ” Burnside, 491 F.3d at 1059 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Claims that are substantially dependent on an analysis of a CBA are also preempted. Id. at 1060.
This court recently explained the policies underlying Burnside's two-part test:
The Burnside factors reflect two driving concerns of preemption doctrine: first, preventing “parties’ efforts to renege on their arbitration promises by ‘relabeling’ as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements,” Livadas, 512 U.S. at 123, 114 S.Ct. 2068, and second, preserving “a central tenet of federal labor-contract law ... that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance,” Lueck, 471 U.S. at 220, 105 S.Ct. 1904.
Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1033 (9th Cir. 2016). Masserant’s claim implicates neither of the aforementioned concerns: she does not claim under the guise of a tort lawsuit that *1096 Alaska Airlines breached its contract with her, nor does she ask the court to interpret her CBA.
A. Masserant’s complaint with the Department of Labor & Industries involves a right that exists, if at all, by virtue of state law.
Burnside made clear that the operative inquiry at the first step of this preemption analysis is whether the right at issue is conferred by state law or by the CBA. See Burnside, 491 F.3d at 1059. “[T]o determine whether a particular right inheres in state law,” courts “consider ‘the legal character of [the] claim, as independent of rights under the collective-bargaining agreement [and] not whether a grievance arising from precisely the same set of facts could be pursued.’” Id. at 1060 (second alteration in original) (quoting Livadas, 512 U.S. at 123, 114 S.Ct. 2068).
It is easy to imagine another similarly situated flight attendant who might be bound to arbitration, such as an employee who contests whether she had accrued the leave at issue. Because the CBA determines how available leave should be calculated, this hypothetical flight attendant’s asserted right would arise from the CBA, and, at step one our analysis would end. See Burnside, 491 F.3d at 1059. Masser-ant’s claim is different because she asserts a different right, and to apply the Bum-side test properly, it is critical to identify the precise right asserted.[2] Masserant pre-scheduled her accrued vacation leave for December, but sought to use it early to care for her sick child. She claims the right to use accrued leave in a certain way, not the right to additional accrued leave. Notably, Alaska Airlines does not dispute that Masserant’s leave had accrued; it objects to Masserant’s insistence that she should be free to reschedule it. The district court recognized that the right at issue is the right to use accrued leave, as do the parties. Masserant describes her claim as a violation of the WFCA based on “earned time that [she] was denied to use [by Alaska Airlines]”; Alaska Airlines acknowledges that the asserted right is Masser-ant’s “claimed right to reschedule her December vacation days for May”; and the Department of Labor & Industries frames the question as whether the WFCA “confers an independent statutory right of flexibility that is superimposed on whatever leave is available to an employee under a collective bargaining agreement or employer policy.”
The majority concludes that Masserant asserts a right that is not independent from the CBA because “the [WFCA] creates no right to any kind of paid leave, and conditions its expansion of rights upon an employee entitlement under the collective bargaining agreement.” Because Masser-ant does not argue that the WFCA creates a right to paid leave, or claim to be entitled to additional leave, or even that she is entitled to use her accrued leave early under the terms of the CBA, the court’s reasoning misses the mark. Masserant asserts the right to use her accrued vacation leave as family medical leave, a right that might arise from the statutory protections within the WFCA, but one that certainly is not provided by the CBA.
The majority reasons that because the WFCA refers to leave provided under the terms of a CBA, “whatever right Masser-ant has cannot, by the terms of the statute, *1097 arise ‘solely’ out of the statute.” But under Burnside’s first step, the question is whether the asserted right “exists independently of the CBA,” not whether it arises solely out of statute. Burnside, 491 F.3d at 1059 (“If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there.”). A claim is not preempted just because it is based on a state statute that refers to rights included in a CBA. For example, in Liradas, the Supreme Court concluded that LMRA § 301 did not preempt a claim challenging an employer’s failure to promptly pay wages at the time of severance. 512 U.S. at 125, 114 S.Ct. 2068. The court recognized that the employee’s right to be paid arose from the CBA, but because the employee contested the failure to pay severance wages promptly, and the right to prompt payment was afforded only by the state statute, the claim was not preempted. Id. (holding the right at issue arose out of state law because “[bjeyond the simple need to refer to bargained-for wage rates in computing the penalty, the collective-bargaining agreement [wa]s irrelevant to the dispute”).
Our recent decision in Kobold supports Masserant’s position. See 832 F.3d 1024. In one of the appeals consolidated in Kobold, the court addressed an Oregon statute that permitted employers to deduct a portion of employees’ wages as health insurance premiums if authorized to do so by a CBA. Id. at 1037-42. The statute made such deductions unlawful if the funds were not properly applied to pay insurance premiums within the time specified by the CBA or, if the CBA was silent, within the statutory limit of seven days.. Id. at 1038. The allegation in Kobold was that the employer failed to transmit the withheld insurance premiums to the health insurance plan in a timely manner. Id. at 1037. Our court held that the claim was not preempted, even though the CBA provided for this type of pay deduction, because the asserted claim was for the failure to remit the deductions in a timely manner, and. only the statute specified a seven-day limitation for transmitting the withheld premiums. Id. at 1040. The CBA did not specify a time period. Id, Our court also held that the Kobold plaintiffs breach of fiduciary duty claim was not preempted because the Oregon statute governing such claims “create[d] and impose[d] duties on an employer independent of a CBA.” Id. at 1041. In contrast, the Kobold court ruled that the same plaintiffs claim for money had and received was preempted, because “[the employer’s] authority to deduct funds from [the plaintiffs] paychecks and [the plaintiffs] right to have those funds applied toward his health insurance premiums” were based' on the CBA and without the CBA, the plaintiff “would have no basis upon which to bring the money had and received claim.” Id.
It is not enough that a CBA refers to a right that is provided by statute. Our court has held that a claim based on a statutorily guaranteed right is not preempted, even when the CBA generally provides for a similar right. See Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102 (9th Cir. 2000). In Balcorta, we held that a California law requiring employers to pay certain employees in the film industry within twenty-four hours of their discharge was not preempted by LMRA § 301. Id. The right to payment and the timeliness of the payments were addressed by the CBA, but we concluded the claim for failure to tender payment within twenty-four hours was not preempted because “whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the collective bargaining agreement.” Id. at 1111; see also Valles v. Ivy Hill Corp., 410 F.3d *1098 1071, 1082 (9th Cir. 2005) (holding claim was not preempted where it was based on a statutorily guaranteed right to work-free meal periods- even though the CBA- purported to waive the right to work-free meal periods).
Like the rights at issue in Livadas, Ko-bold, and Balcorta, if Masserant has the right to use her vacation' time for family leave, it arises from a state statute, here, the WFCA, and not from the parties’ CBA.
B. The right Masserant asserts is not substantially dependent on analysis of the CBA.
The second step of the Burnside analysis requires a “determinfetion] whether a state law right is ‘substantially dependent’ on the terms of a CBA.”[3] Burnside, 491 F.3d at 1060 (citation omitted). To apply this part of the test, a court must “decide whether the claim can be resolved by ‘looking] to’ versus interpreting the CBA.” Id. (alteration in original) (citation omitted). The line between “looking to” and “interpreting” is sometimes less than clear-cut, but “ ‘when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.’” Id. (alteration in original) (quoting Livadas, 512 U.S. at 125, 114 S.Ct. 2068); see Hawaiian Airlines, 512 U.S. at 262, 114 S.Ct. 2239 (“[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is ‘independent’ of the agreement for ... pre-emption purposes.” (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 408-10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988))).
In Kobold, where the state law required employers to transmit paycheck deductions to health insurance plans in a timely manner, we held that the claim was not preempted at Burnside’s second step because the CBA “unambiguously specif[ied]” the parties’ rights and obligations and therefore did not require interpretation. 832 F.3d at 1040; see also Balcorta, 208 F.3d at 1109-10 (holding claim not preempted where court is required to “read and apply” CBA provisions that are “neither uncertain nor ambiguous”). In Matson v. United Parcel Service, Inc., 840 F.3d 1126 (9th Cir. 2016), we held that a hostile work environment claim only “peripheral[ly]” involved the CBA and was not preempted because no interpretation of the CBA was required. Id. at 1134-35. Matson involved an employee who claimed that she was subject to a hostile work environment, in part because her supervisors assigned “extra work” in a way that favored male co-workers. Id. at 1129. The employer argued that the employee’s claim was preempted because the term “extra work” appeared in the CBA and her claim could not be resolved without interpreting the term. Id. at 1133. But the employee’s hostile work environment claim was not dependent upon consideration of the extra work assignments because her contention that extra work was disproportionately assigned to male coworkers was just one example of ways in which the employee argued her male coworkers were favored. Id. We explained that the hostile work environment claim was not preempted at Burnside’s, second step because “[t]he correct interpretation of the CBA ... [was] purely peripheral to the relevant question with respect to assigning work.” Id. at 1134-35.
In Masserant’s case, the key provisions of the CBA are also wholly undisputed and *1099 do not require interpretation. As of May 2011, when her child was ill, Masserant had an accrued paid vacation scheduled for December. The CBA permits vacation leave to be used at unscheduled times in certain circumstances, but does not address whether vacation leave may be used for an absence due to a flight attendant’s own illness or a child’s illness. Because “[t]here is nothing in the ... CBA to interpret,” the WFCA’s state-law right is not substantially dependent on the CBA. See Kobold, 832 F.3d at 1040.
The majority concludes that because Masserant refers to the CBA’s leave provision to argue that it violates the WFCA, some “analysis” is required. But it does not explain why the CBA must be consulted, much less analyzed. On this record, I conclude that Masserant’s claim does not “substantially depend” on analysis of the CBA, and that it is not preempted under the second pronj* of Burnside.
There is persuasive force to Alaska’s argument that “crew absences present unique concerns in the airline industry,” because “without the requisite number of flight attendants on board, a plane cannot take off.” But the limited question before this panel is the proper forum for resolving the important underlying questions raised by Masserant’s claim. I would hold only that the district court correctly concluded that the Washington Department of Labor & Industries’ enforcement of Mas-serant’s WFCA complaint is not preempted by the RLA, and that the correct forum for resolving the parties’ dispute is the state administrative process.

. The RLA divides labor disputes into "major” and "minor” disputes. Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562-64, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). “Major disputes” are "those arising 'out of the formation or change of collective *1095 bargaining agreements.’ ” Id. at 563, 107 S.Ct. 1410 (quoting Detroit & T.S.L.R. Co. v. Transp. Union, 396 U.S. 142, 145 n.5, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969)). “Minor disputes” are those " ‘growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.’ ” Id. (quoting 45 U.S.C. § 153). The parties agree that only the minor dispute procedures are relevant to this appeal.

. The Supreme Court has cautioned that this preemption analysis must be conducted on a case-by-base basis. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis.”); see Adkins v. Míreles, 526 F.3d 531, 541 (9th Cir. 2008).

. Although the majority analyzes Masserant’s claim in the context of Burnside’s step two, it ultimately relies on step one to conclude that Masserant’s claim is preempted.