12-336-cv
*Fowlkes v. Ironworkers Local 40, et al.*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: September 24, 2014     Decided: June 19, 2015)

Docket No. 12-336-cv

COLE FOWLKES,

*Plaintiff-Appellant,*

–v.–

IRONWORKERS LOCAL 40, DANNY DOYLE, KEVIN O'ROURKE,

*Defendants-Appellees.*[*]

B e f o r e :

LEVAL, CHIN, and CARNEY, *Circuit Judges.*

Plaintiff-Appellant Cole Fowlkes appeals from a December 20, 2011 judgment of the United States District Court for the Southern District of New

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

York (Preska, *Chief Judge*) dismissing his *in forma pauperis* complaint for lack of subject matter jurisdiction. Fowlkes, who self-identifies as male but was born biologically female, alleges that his labor union, Ironworkers Local 40, and two of its business agents, Danny Doyle and Kevin O'Rourke, discriminated against him on the basis of sex and retaliated against him for filing an earlier action against them. Invoking its authority to screen an *in forma pauperis* complaint at any time, the District Court, acting *sua sponte*, held that Fowlkes's failure to exhaust administrative remedies deprived the court of subject matter jurisdiction over his federal claims. The District Court thus also dismissed Fowlkes's state- and city-law claims for lack of jurisdiction.

We conclude that the administrative exhaustion requirement of Title VII, 42 U.S.C. § 2000e-5(e), is not a jurisdictional prerequisite to suit in federal court, but rather is a necessary precondition to suit and is subject to equitable defenses. We therefore **VACATE** the District Court's judgment dismissing Fowlkes's federal claims for lack of jurisdiction and **REMAND** for the District Court to determine whether any equitable defenses excuse Fowlkes's failure to exhaust his administrative remedies. On remand, the District Court shall also entertain Fowlkes's claim under the National Labor Relations Act, 29 U.S.C § 151, *et seq.*, for breach of the duty of fair representation, and shall revisit, in light of the pending federal claims, whether to exercise supplemental jurisdiction over related state- and city-law claims.

VACATED AND REMANDED.

————————

ROBERT T. SMITH (Tami Kameda Sims and Howard R. Rubin, *on the brief*), Katten Muchin Rosenman LLP, Washington, DC, and Los Angeles, CA, *for Appellant*.

JOHN S. GROARKE (Jennifer D. Weekley, *on the brief*), Colleran, O'Hara & Mills LLP, Woodbury, NY, *for Appellees*.

————————

2

SUSAN L. CARNEY, *Circuit Judge*:

Plaintiff-Appellant Cole Fowlkes appeals from a December 20, 2011 judgment of the United States District Court for the Southern District of New York (Preska, *Chief Judge*), dismissing his *in forma pauperis* complaint for lack of subject matter jurisdiction. Fowlkes, who self-identifies as male but was born biologically female, alleges that his union, Ironworkers Local 40 (the "Local"), and two of its business agents, Danny Doyle and Kevin O'Rourke (the Local, Doyle, and O'Rourke, together, "defendants"), discriminated against him on the basis of sex and retaliated against him for filing an earlier action against them. The discrimination and retaliation alleged by Fowlkes primarily consisted of refusing to refer Fowlkes for work through the Local's hiring hall.

The District Court construed Fowlkes's complaint as stating federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and related state- and city-law claims. Invoking its authority pursuant to 28 U.S.C. § 1915(e)(2)(B) to screen an *in forma pauperis* complaint at any time, the District Court, acting *sua sponte*, held that Fowlkes's failure to exhaust administrative remedies for his Title VII claims deprived the court of subject matter jurisdiction over those claims. On the understanding that no federal

3

claim remained after the Title VII claims' dismissal, the District Court declined to exercise supplemental jurisdiction over the related state- and city-law claims, and entered a judgment dismissing Fowlkes's complaint *in toto*.

For the reasons stated below, we conclude that the District Court erred in its determination that Fowlkes's failure to exhaust administrative remedies deprived it of subject matter jurisdiction over his Title VII claims. In addition, we conclude that Fowlkes has stated a federal claim under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, for the Local's breach of its duty of fair representation. Accordingly, we vacate the judgment dismissing Fowlkes's amended complaint and remand the cause to the District Court. On remand, the District Court shall: (1) consider whether any equitable defenses excuse Fowlkes's failure to exhaust his administrative remedies for his Title VII claims; (2) conduct further proceedings on Fowlkes's duty of fair representation claim; and (3) reevaluate whether to exercise supplemental jurisdiction over Fowlkes's pendent state- and city-law claims and conduct any further proceedings on those claims as it determines may be warranted.

## BACKGROUND

### I.    Factual Background[1]

Fowlkes is a journeyman ironworker and a member of Local 40.  As a journeyman ironworker, Fowlkes would (in his words) detonate "caps/blow cement from steel/use torch to cut/burn steel[,] preparing it for the welder."  2011 Am. Compl. at 15.  Although Fowlkes was born biologically female and was named "Colette," he now self-identifies as a man, preferring to be called "Cole" and to be referred to in the masculine.  *Id.* at 1; Appellant's Br. at 3.

To place its members at job sites, the Local ran a hiring hall, and Doyle and O'Rourke, as business agents for the Local, participated in the placement process.  Fowlkes alleges that, beginning as early as 2005, the Local refused to refer him to jobs for which he was qualified, "[i]ntentionally passing over [Fowlkes] by choosing other men to receive [the] construction work" that he sought.  2011 Am. Compl. at 17.  Fowlkes further alleges that O'Rourke received calls specifically requesting him for particular jobs for which he had the requisite skills, but that O'Rourke and Doyle passed him over in favor of others "with

---

[1] On review of this dismissal for lack of subject matter jurisdiction, we construe the facts in the light most favorable to Fowlkes.  *See TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

lesser skill level." *Id.* at 19. The Local's failure to refer Fowlkes for assignments allegedly continued through 2011; in that year, Fowlkes claims to have worked a total of only sixty-seven hours as a journeyman, again as a result of defendants' "refusal to refer and give [him] work." *Id.* at 21.

Fowlkes alleges that defendants failed to refer him for work for two primary reasons. First, he asserts that defendants discriminated against him on the basis of sex: Fowlkes claims that if he had "acted with a femin[in]e character or worked with less musc[le], he might [have] not [incurred] [i]ntentional passing over." *Id.* at 16; *see also id.* at 25 (alleging that defendants told him that he "would get a good job if [he] would act like a girl"). Second, Fowlkes recounts that Doyle and O'Rourke each told him that they refused to refer him for work because he had previously filed a suit against the Local.[2] He explains that, when he inquired why he was not receiving work despite his position at the "top of the out of work list," O'Rourke allegedly responded by saying "well you're sueing [sic] us," and Doyle similarly replied that Fowlkes "should[n't] [have] tried to sue us." *Id.* at 17.

Beyond defendants' alleged refusal to refer him for work, Fowlkes also claims that he was subjected to discriminatory treatment at job sites on account

---

[2] As discussed *infra*, Fowlkes filed a discrimination charge against the Local in 2007.

of his sex, and he suggests that the defendants' response to that treatment reflects their discriminatory stance towards him.  For example, he alleges that in 2008, a welder at a job site told him, "I always thought you would be a girl that would work and make the man happy."  *Id.* at 15.  The welder became angry at Fowlkes's response and began "throwing welding leads around," endangering Fowlkes, who then reported the incident to a superior at the job site.  *Id.* at 16. The superior informed Doyle and O'Rourke of Fowlkes's report and the welder's behavior.  Fowlkes complains that "there were no attempts . . . to correct or remove the situation" and that Doyle and O'Rourke "found the actions of the welder . . .  amus[]ing" and "told [Fowlkes] to just keep working."  *Id.*

II.    **Procedural Background**

    a.  **Fowlkes's Prior Action**

On May 29, 2007, Fowlkes initiated proceedings before the Equal Employment Opportunity Commission ("EEOC"), charging the Local with discrimination and alleging that the Local subjected him to retaliation and sex-based discrimination in violation of Title VII.[3]  The EEOC issued Fowlkes a "Right to Sue" letter dated July 10, 2007:  The letter notified him that, after

---

[3] At that time, Fowlkes self-identified as a female in formal documents and referred to himself as "Ms. Cole Fowlkes."  The substance of his claims, however, mirrored that presented in the current suit.

7

concluding its investigation, the EEOC had decided not to take further action against the Local. It advised that Fowlkes was free to pursue his Title VII claims by filing a federal suit against the Local within ninety days of his receipt of the letter. It was not until more than 180 days later, however—on January 25, 2008— that Fowlkes filed a complaint against defendants in the United States District Court for the Southern District of New York.

Proceeding *pro se* in that 2008 action, Fowlkes made essentially the same allegations as he had in his EEOC charge. Defendants moved for summary judgment. In early 2010, Magistrate Judge Freeman issued a Report and Recommendation ("R&R") concluding, on the ground that Fowlkes's action was untimely, that defendants' motion should be granted. Shortly thereafter, Judge Kaplan granted defendants' motion for substantially the reason given in the R&R.

### b. Fowlkes's Second Action

In July 2011, Fowlkes filed a second complaint, again in the Southern District of New York and again proceeding *pro se*, alleging that defendants violated his "Civil Rights (involving Employment)" by subjecting him to harassment and refusing to refer him for work based on his sex.[4] 2011 Compl. at

---

[4] In this complaint, Fowlkes referred to himself as "Mr. Cole Fowlkes."

8

2.  The allegations in this 2011 complaint covered the period from 2005 through 2011.  Concurrently, Fowlkes sought permission to proceed *in forma pauperis*.

In October 2011, the District Court granted Fowlkes's request to proceed *in forma pauperis* and directed Fowlkes to submit an amended complaint within sixty days.  In the same order, the District Court, citing its authority under 28 U.S.C. § 1915(e)(2)(B) "to screen *sua sponte* an *in forma pauperis* complaint at any time,"[5] considered its jurisdiction over the matter.  J.A. 17.  It first construed Fowlkes's complaint as raising claims under three statutes: Title VII; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101, *et seq.*  The District Court then observed, "Before a federal court may review a claim under Title VII, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC or an appropriate state agency within 300 days of the unlawful discriminatory act."  *Id.* at 22.  Because Fowlkes did not allege that he had filed a complaint with the EEOC or any New York agency relating to conduct occurring *after* May 29, 2007,[6] the District Court's subject matter

---

[5] Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court must dismiss "at any time" an *in forma pauperis* complaint that "fails to state a claim on which relief may be granted."  *See also Giano v. Goord*, 250 F.3d 146, 149 (2d Cir. 2001).

[6] As noted above, Fowlkes filed a charge with the EEOC on May 29, 2007, and the federal suit based on the conduct alleged in that charge was dismissed on timeliness grounds in early 2010.

jurisdiction over Fowlkes's Title VII claim was uncertain, it warned. In light of Fowlkes's *pro se* status, the District Court granted him leave to amend his complaint to "(1) detail his Title VII and New York State and City Human Rights Law claims of discrimination that were not already raised in the Prior [Action] as set forth above, and (2) allege whether he received a Determination or Right to Sue Letter or whether he otherwise attempted to exhaust his administrative remedies." *Id.* at 26.

In November 2011, Fowlkes filed an amended complaint, as directed. On December 20, 2011, again acting *sua sponte* pursuant to its authority under 28 U.S.C. § 1915(e)(2)(B), the District Court held that Fowlkes's Title VII claim "must be dismissed because he does not allege that he exhausted his administrative remedies." *Id.* at 73 (citing 42 U.S.C. § 2000e-5(e)(1)). The District Court elaborated that "because Plaintiff has not exhausted his Title VII claim, the Court does not have jurisdiction over that Title VII claim." *Id.* Having dismissed the Title VII claims, the District Court then determined that only state- and city-law claims remained and concluded that it lacked subject matter jurisdiction to adjudicate those claims standing alone. It therefore dismissed the case *in toto*.

Fowlkes timely appealed.[7]

## **<u>DISCUSSION</u>**[8]

On appeal, Fowlkes argues that the District Court erred in dismissing his amended complaint because exhaustion of administrative remedies before filing a Title VII action in federal court is a not a jurisdictional requirement, but rather a precondition of suit that may be subject to equitable defenses. On the merits, Fowlkes asserts that he has adequately pleaded claims for both violations of Title VII and breach of the duty of fair representation under the NLRA. He further argues that, assuming he sufficiently pleaded at least one federal claim, the District Court erroneously declined to exercise supplemental jurisdiction over his pendent state- and city-law claims.

For the reasons discussed below, we agree with Fowlkes that a plaintiff's failure to exhaust administrative remedies available for Title VII claims does not pose a jurisdictional bar to a district court's consideration of those claims. We also conclude that he has pleaded an NLRA claim that survives § 1915(e) review.

---

[7] Although he proceeded in the District Court *pro se*, Fowlkes is now ably represented by court-appointed counsel.

[8] We review *de novo* a district court's *sua sponte* dismissal of an *in forma pauperis* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

11

We therefore vacate the judgment of the District Court and remand for further proceedings.

### I.   Subject Matter Jurisdiction and the Failure to Exhaust Administrative Remedies for Title VII Claims

It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (citing 42 U.S.C. § 2000e-5(e) and (f)); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (same). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (internal quotation marks omitted). The administrative exhaustion requirement applies to *pro se* and counseled plaintiffs alike. *See Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir. 1999) (per curiam).

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[]"; accordingly, it is "a precondition to bringing such claims in federal court." *Legnani*, 274 F.3d at 686 (internal quotation marks omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies . . . ."). The weight of precedent

demonstrates that administrative exhaustion is not a *jurisdictional* requirement; rather, it is merely a precondition of suit and, accordingly, it is subject to equitable defenses.

The distinction has been effectively drawn by the Supreme Court.  In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), a group of flight attendants brought a class action alleging that TWA unlawfully discriminated against them on the basis of sex in violation of Title VII, *id.* at 388.  Approximately 92% of the plaintiffs had not timely filed claims with the EEOC before the suit was brought in federal court.  *Id.* at 390.  After the Seventh Circuit Court of Appeals held that these claims were "jurisdictionally barred," the plaintiffs appealed, asking the Supreme Court to address the "single question . . . whether the timely filing of an EEOC charge is a jurisdictional prerequisite to bringing a Title VII suit in federal court or whether the requirement is subject to waiver and estoppel."  *Id.* at 390, 392.  The Supreme Court sided with the plaintiffs, holding that "filing a timely charge of discrimination with the EEOC is *not* a jurisdictional prerequisite to suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling."  *Id.* at 393 (emphasis added).  According to the Court, this conclusion was dictated by "[t]he structure of Title VII, the congressional policy underlying it, and the reasoning of [its] cases."  *Id.*  Particularly relevant here, the

13

Court cited in support of its conclusion two cases in which at least some of the plaintiffs seeking relief in federal court—like Fowlkes with regard to his allegations of post–May 29, 2007 misconduct—had never filed an EEOC charge at all.  *See id.* at 396–97 (citing *Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976), and *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)).

In line with *Zipes*, our Court has previously ruled that the exhaustion of administrative remedies "is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement."  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotation marks omitted); *see also Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) (analyzing the statutory structure of Title VII to conclude that "the exhaustion requirement, while weighty, is not jurisdictional").  For example, in *Francis*, we held that the district court had subject matter jurisdiction to hear the plaintiff's Title VII failure-to-promote claim, even though his proper exhaustion of the claim was "not free from uncertainty," because failure to exhaust was merely a defense subject to waiver. *Id.* at 766.  Similarly here, the question whether Fowlkes properly exhausted his claims is "not free from uncertainty," *id.*, but this ambiguity has no bearing on the subject matter jurisdiction of the District Court.

Occasionally, passing descriptions of the exhaustion requirement as "jurisdictional" can be found in our Circuit's jurisprudence. *See, e.g.*, *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) ("If a [Title VII] claimant has failed to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim."); *Shah v. N.Y.S. Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999) ("The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge."). But "when our decisions have turned on the question . . . whether proper administrative exhaustion [of a Title VII claim] is a jurisdictional prerequisite . . . to bringing suit," we have "consistently" held that it is not. *Francis*, 235 F.3d at 768. We therefore take this opportunity to underscore that the failure of a Title VII plaintiff to exhaust administrative remedies raises no jurisdictional bar to the claim proceeding in federal court.

As suggested above, the mischaracterization of a Title VII plaintiff's administrative exhaustion requirement as "jurisdictional" has practical effect. A "[c]ourt has no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). In contrast, a mandatory but nonjurisdictional prerequisite to suit may be subject to equitable defenses. *See id.* at 216 (Souter, *J.*, dissenting); *see also Fernandez v. Chertoff*, 471

15

F.3d 45, 58 (2d Cir. 2006) ("Because [the] failure to exhaust [one's] administrative remedies is not a jurisdictional defect, it is subject to equitable defenses."). By treating the issue of subject matter jurisdiction as a threshold matter here, the District Court did not consider any potential equitable defenses that Fowlkes might present to excuse his failure to exhaust his administrative remedies.

It is not clear from the record, at this stage, whether an equitable principle may excuse Fowlkes's failure to exhaust before filing his 2011 complaint. As Fowlkes has urged in his brief on appeal—and defendants have challenged—two equitable doctrines that the District Court will be called on to consider on remand are futility and "reasonable relatedness." Because of their direct bearing on the facts as alleged, we discuss aspects of each of these possible defenses below.

When an agency has previously "taken a firm stand" against a plaintiff's position, the plaintiff's failure to exhaust administrative remedies may be excused on the ground that exhaustion would be futile. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997) (internal quotation marks omitted); *cf. Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) (noting that the exhaustion requirement for ERISA claims "is not absolute" and may be excused when a plaintiff demonstrates that pursuing administrative remedies would be futile).

16

Though our Circuit has not had occasion to consider this particular equitable defense in the context of EEOC Title VII exhaustion, Fowlkes may have a colorable argument that filing a charge alleging discrimination based on his transgender status would have been futile. When Fowlkes filed his 2011 complaint, the EEOC had developed a consistent body of decisions that did not recognize Title VII claims based on the complainant's transgender status. *See, e.g., Kowalczyk v. Dep't of Veterans Affairs*, No. 01942053, 1994 WL 744529, at *2 (E.E.O.C. Dec. 27, 1994) (concluding that an "appellant's allegation of discrimination based on her acquired sex (transsexualism) is not a basis protected under Title VII"); *Campbell v. Dep't of Agriculture*, No. 01931730, 1994 WL 652840, at *1 n.3 (E.E.O.C. July 21, 1994) (recognizing precedent holding that "gender dysphoria or transsexualism is not protected under Title VII under the aegis of sex discrimination"); *Casoni v. U.S. Postal Serv.*, No. 01840104, 1984 WL 485399, at *3 (E.E.O.C. Sept. 28, 1984) ("[A]ppellant's allegation of sex discrimination on account of being a male to female preoperative transsexual . . . [is] not cognizable . . . under the provisions of Title VII."). It was not until *Macy v. Holder*, No. 0120120821, 2012 WL 1435995 (E.E.O.C. Apr. 20, 2012), published after Fowlkes filed his 2011 complaint, that the EEOC altered its position and concluded that discrimination against transgender individuals based on their

17

transgender status does constitute sex-based discrimination in violation of Title VII. *Id.* at *11 & n.16. Thus, Fowlkes's failure to exhaust could potentially be excused on the grounds that, in 2011, the EEOC had "taken a firm stand" against recognizing his Title VII discrimination claims.

A second equitable defense potentially available to Fowlkes is that his more recent allegations of discrimination may be "reasonably related" to the discrimination about which he had filed an earlier charge with the EEOC. "[W]here the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge," or "where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," the failure to raise the allegations in the complaint before the EEOC may not bar federal court proceedings. *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted).

Here, Fowlkes alleges in his amended complaint that he was not referred for work as retaliation for having previously sued defendants. In addition, the District Court may reasonably determine that Fowlkes was discriminated against by defendants "in precisely the same manner" in the years leading up to the amended complaint as was alleged in the earlier EEOC charge. Given the contents of Fowlkes's amended complaint and the close resemblance that it bore

18

to his earlier EEOC charge, his more recent allegations may be "reasonably related" to those included in his earlier administrative filing with the EEOC.

As we have mentioned, the District Court has not yet had an opportunity to consider whether futility is a cognizable equitable defense in the context of EEOC Title VII exhaustion and, in this particular case, whether futility, "reasonable relatedness," or any other equitable doctrine excuses Fowlkes's failure to exhaust his administrative remedies.  We therefore remand to the District Court to address these questions in the first instance, on full briefing by the parties.[9]

## II.     Duty of Fair Representation Claim

The District Court construed Fowlkes's complaint as raising claims under only one federal statute: Title VII.  Fowlkes contends on appeal that he also stated a claim against the Local under the NLRA for breach of the duty of fair representation.  Although he articulated that claim less than plainly, we are inclined to agree with Fowlkes on appeal.

---

[9] We further decline to consider the merits of Fowlkes's Title VII claims at this juncture.  If the District Court determines that Fowlkes's failure to exhaust his administrative remedies cannot be excused, then Fowlkes has not satisfied a necessary predicate for his Title VII claims, and those claims may be dismissed without examining his substantive allegations.  Thus, our consideration of the merits of Fowlkes's Title VII claims would be premature.

Because Fowlkes appeared *pro se* before the District Court, he is "entitled to special solicitude," and we will read his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). At the same time, a *pro se* complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The duty of fair representation is a "statutory obligation" under the NLRA, requiring a union "to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). This duty applies in the hiring hall setting because, there, "members of the [union] have entrusted the union with the task of representing them" and it is essential that work be assigned "in a nonarbitrary and nondiscriminatory fashion." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 88 (1989). A union breaches its duty of fair representation if its actions with

respect to a member are arbitrary, discriminatory, or taken in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).[10]

Although Fowlkes's amended *pro se* complaint did not flag the NLRA, we nonetheless are persuaded, with the benefit of a counseled brief on Fowlkes's behalf, that Fowlkes has stated a plausible claim for a breach of the duty of fair representation. In his amended complaint, Fowlkes alleges that the Local refused to refer him for work for which he was qualified because of his transgender status and in retaliation for instituting legal proceedings against the Local. Allegations that a union abused its hiring hall procedures to undermine a member's employment opportunities warrant particularly close scrutiny when a union wields special power as the administrator of a hiring hall. *Breininger*, 493 U.S. at 89; *see also Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516, 521 (6th Cir. 2011). Assuming, as we must, that Fowlkes's allegations are true, the Local's conduct was at the very least arbitrary, if not discriminatory or indicative of bad faith.

In urging us to sustain the dismissal of this claim, too, defendants assert that a six-month statute of limitations applies to duty of fair representation

---

[10] A duty of fair representation cause of action does not lie against the individual defendants Doyle and O'Rourke. *See Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) (per curiam). Such a claim may be stated only against a union. *Id.*

21

claims, arguing that, to survive, Fowlkes's claim must arise out of events occurring in the six months prior to the filing of his 2011 complaint.[11] *See Coureau v. Granfield*, 556 F. App'x 40, 41 (2d Cir. 2014). Because Fowlkes's allegations regarding their conduct during the relevant six-month period—from January 29, 2011 through July 29, 2011—fail to plausibly state a claim, they say, his suit on this ground is barred.

Even assuming the applicability of a six-month statute of limitations, defendants are incorrect that Fowlkes has failed to plausibly state a claim. Fowlkes asserts in his amended complaint that the Local would not provide him employment *throughout* 2011. 2011 Am. Compl. at 3. He alleges that he received only 67 hours of work in all of 2011, "less than a two week period" in total, and that he was told in May and June of that year that he "could forget about getting any work." *Id*. at 21. Based on the foregoing, Fowlkes plausibly stated a duty of fair representation claim based on conduct occurring within the six-month statute of limitations period.

Second, defendants contend that Fowlkes's claim for breach of the duty of fair representation is irretrievably undermined by the complaint's own

---

[11] As previously discussed, Fowlkes originally filed his complaint in the District Court in July 201l. At the instruction of the court, he amended the complaint and refiled in November 2011. The parties do not dispute that the statute of limitations period for Fowlkes's duty of fair representation claim would run from the date of the original pleading—here, July 29, 2011.

allegations, which reflect that Fowlkes was, in fact, referred for work in May and June 2011. This argument rests on an obvious fallacy: the mere fact that Fowlkes was referred for *some* work during the relevant period does not defeat a claim that he was subjected to arbitrary, discriminatory, or bad-faith treatment by the Local's overall distribution of work. A union need not completely eliminate a member's employment opportunities before the member may be entitled to relief.

Finally, defendants argue that Fowlkes may not pursue a duty of fair representation claim in court because he failed to demonstrate that he exhausted his remedies within the union. This argument, too, is unavailing. The union, not the member, bears the burden of demonstrating that the member failed to exhaust intra-union grievance procedures, *see Johnson v. Gen. Motors*, 641 F.2d 1075, 1079 (2d Cir. 1981), and "courts have discretion to decide whether to require exhaustion of internal union procedures," *Clayton v. Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). Defendants may attempt to meet this burden before the District Court on remand, but a cursory invocation of an intra-union exhaustion requirement in their appellate brief certainly does not suffice to bar the duty of fair representation claim from proceeding past the pleadings stage.

23

In sum, we conclude that Fowlkes has stated a claim for breach of the duty of fair representation against the Local. We vacate the District Court's determination that Fowlkes stated federal claims under only Title VII, and we remand for further proceedings on his duty of fair representation claim.

### III.   Pendent State- and City-Law Claims

Fowlkes also appeals the District Court's dismissal of his pendent state- and city-law claims under the NYSHRL and NYCHRL. This decision is reviewed for abuse of discretion. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 84 (2d Cir. 2013). To find an abuse of discretion, "we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 99 (2d Cir. 2014).

Here, the District Court dismissed the state- and city-law claims based on the premise that Fowlkes did not plead a federal claim for which there exists subject matter jurisdiction. Because we have now concluded that (1) Fowlkes's failure to exhaust administrative remedies did not deprive the District Court of jurisdiction over his Title VII claims, and (2) Fowlkes has stated a claim under the NLRA for breach of the duty of fair representation, we vacate the dismissal of Fowlkes's pendent state- and city-law claims to allow the District Court to

24

reconsider on remand whether exercising supplemental jurisdiction is appropriate given our conclusions regarding his federal claims.

## CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.