16-1856-cv(L)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: April 19, 2017                    Decided: July 25, 2017)

Docket Nos. 16-1856-cv(L), 16-1864-cv(XAP)


_____


HECTOR J. FIGUEROA,
President, SEIU Local 32BJ, CTW, CLC,

*Plaintiff-Appellee-Cross-Appellant*,

v.

COMMISSIONER HELEN D. FOSTER,
New York State Division of Human Rights,

*Defendant-Appellant-Cross-Appellee*.


_____


Before: CALABRESI, POOLER, and WESLEY, *Circuit Judges*.


Appeal from the May 12, 2016 order of the United States District Court for

the Southern District of New York (Woods, *J.*) granting summary judgment to

SEIU Local 32BJ, CTW, CLC. *Figueroa v. Foster*, No. 1:14-cv-8796, 2016 WL 2851335 (S.D.N.Y. May 12, 2016).

In this case, we are asked to decide whether the duty of fair representation under the National Labor Relations Act ("NLRA") preempts the New York State Human Rights Law ("NYSHRL") for claims of discrimination filed by a union member against a labor organization when the labor organization is acting in its capacity as a collective bargaining representative (as distinguished from when it is acting in its capacity as an employer). If the NLRA's duty of fair representation preempts the NYSHRL, then Title VII as administered by the Equal Employment Opportunity Commission will serve as the primary force protecting union members from invidious discrimination by their labor organizations. If, on the other hand, the NLRA's duty of fair representation does not preempt the NYSHRL, then the NYSHRL as administered by the New York State Division of Human Rights will provide union members with additional protections against invidious discrimination by their labor organizations.

Because we hold that the NLRA's duty of fair representation does not necessarily preempt the NYSHRL, even when a labor organization is acting in its

2

capacity as a collective bargaining agent, in the circumstances of this case, we reverse.

Reversed.

_____

ANDREW RHYS DAVIES, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Defendant-Appellant-Cross-Appellee*.

JAMES REIF, Gladstein, Reif & Meginniss, LLP (Jessica E. Harris, *on the brief*), New York, NY, *for Plaintiff-Appellee-Cross-Appellant*.

POOLER, *Circuit Judge*:

Appeal from the May 12, 2016 order of the United States District Court for the Southern District of New York (Woods, *J.*) granting summary judgment to SEIU Local 32BJ, CTW, CLC. *Figueroa v. Foster*, No. 1:14-cv-8796, 2016 WL 2851335 (S.D.N.Y. May 12, 2016).

In this case, we are asked to decide whether the duty of fair representation under the National Labor Relations Act ("NLRA") preempts the New York State Human Rights Law ("NYSHRL") for claims of discrimination filed by a union

member against a labor organization when the labor organization is acting in its capacity as a collective bargaining representative (as distinguished from when it is acting in its capacity as an employer). If the NLRA's duty of fair representation preempts the NYSHRL, then Title VII as administered by the Equal Employment Opportunity Commission ("EEOC") will serve as the primary force protecting union members from invidious discrimination by their labor organizations. If, on the other hand, the NLRA's duty of fair representation does not preempt the NYSHRL, then the NYSHRL as administered by the New York State Division of Human Rights will provide union members with additional protections against invidious discrimination by their labor organizations.

Because we hold that the NLRA's duty of fair representation does not necessarily preempt the NYSHRL, even when a labor organization is acting in its capacity as a collective bargaining agent, in the circumstances of this case, we reverse.

# BACKGROUND

## I. Factual Background

Defendant-Appellant-Cross-Appellee Commissioner Helen D. Foster (the "Commissioner") is the Commissioner of the New York State Division of Human Rights ("SDHR"). The SDHR is responsible for the administrative enforcement of the NYSHRL. The NYSHRL prohibits the commission of specific unlawful discriminatory practices, including retaliatory conduct, by entities including labor organizations. The SDHR has promulgated regulations for the enforcement of the NYSHRL.

Plaintiff-Appellee-Cross-Appellant Hector J. Figueroa is the President of SEIU Local 32BJ, CTW, CLC (the "Local"). The Local is a labor organization that is constituted for the primary purposes of collective bargaining and of dealing with employers concerning grievances, labor disputes, and terms or conditions of employment. The Local currently represents more than 145,000 employees for the purpose of collective bargaining, of which more than 81,000 currently work in the State of New York.

Every collective bargaining agreement to which the Local is a party includes a grievance or arbitration mechanism for resolving disputes, including disputes about employee discipline. When an employee has a dispute with his or her employer, that employee first files a grievance with the Local's Contract & Grievance Center (the "CGC"). If the CGC decides not to pursue an employee grievance with the employer, the employee can appeal to the Local's Grievance Appeal Board (the "GAB"). The GAB then makes findings and a recommendation to the Local's Executive Board over whether to uphold or overturn the CGC's decision not to pursue the employee's grievance.

Between June 1, 2009 and November 4, 2014 when the Local commenced this action, sixteen individuals filed complaints with the SDHR alleging one or more violations of the NYSHRL by the Local. Between November 4, 2014 and April 6, 2016, five additional complaints were filed with the SDHR alleging one or more violations of the NYSHRL by the Local. Each complaint included at least one allegation that the Local "failed to demand arbitration, failed to handle an arbitration properly, or engaged in some other discriminatory [or retaliatory] conduct as the [complainant's] collective bargaining representative, in violation

of the [NYS]HRL." App'x at 631. All but one of the complaints were dual filed with the EEOC as the discrimination alleged violated both the NYSHRL and federal law, including Title VII.

The SDHR investigated the merits of each complaint and made a determination regarding whether there was probable cause to believe the Local had committed or was committing an unlawful discriminatory practice in violation of the NYSHRL. The Local, for its part, contested the jurisdiction of the SDHR over each complaint, asserting that the duty of fair representation arising from the NLRA preempted the NYSHRL and deprived the SDHR of jurisdiction.

As of April 6, 2016, the SDHR had dismissed sixteen of the twenty-one complaints for lack of probable cause to believe the Local had engaged in the alleged discrimination. Three complaints were withdrawn by the complainants. An additional two complaints remained pending.

**II.     Procedural Background**

On November 4, 2014, Figueroa, in his role as President of the Local, filed a complaint against the Commissioner in the United States District Court for the Southern District of New York.

7

On December 8, 2014, the Local filed its First Amended Complaint ("FAC") in the instant action. The FAC alleges causes of action pursuant to the Supremacy Clause and 42 U.S.C. § 1983 for declaratory and injunctive relief. On December 16, 2014, the Local filed a motion for a preliminary injunction with the district court.

On February 3, 2015, the district court denied the Local's motion for a preliminary injunction. The district court found there would be a harm to the public if the SDHR were enjoined from pursuing claims against the Local under the NYSHRL because "in addition to affecting the State's ability to enforce the State law that the [Local] claims is preempted by the [NLRA], it will also have an adverse impact on the joint state and federal scheme for the enforcement of anti[-]discrimination laws, including Title VII." App'x at 365.

On May 12, 2016, the district court granted summary judgment in favor of the Local and in opposition to the Commissioner and granted the Local declaratory, but not injunctive, relief. *Figueroa*, 2016 WL 2851335, at *1, *12. The district court explained that the material facts in the case were undisputed, and that the parties simply disagreed over a "specific, narrow, legal question: does a

8

union's duty of fair representation preempt the application of the [NYS]HRL when the union is acting in its capacity as a collective bargaining representative?" *Id.* at *3.

The district court first addressed the duty of fair representation. *Id.* at *3-*6. The district court explained that the duty of fair representation "arises by implication under the [NLRA]," and is governed by federal law. *Id.* at *3-*4. The district court accordingly determined that the duty of fair representation "will preempt state law unless a state claim can be shown to arise wholly outside the ambit of the [duty of fair representation]." *Id.* at *4 (internal quotation marks omitted). The district court noted that the First, Fourth, Fifth, Ninth, and Tenth Circuits had all held that the duty of fair representation preempts substantive state law following the Supreme Court's holding in *Vaca v. Sipes*, 386 U.S. 171 (1967). *Figueroa*, 2016 WL 2851335, at *4 (collecting cases).

In analyzing the relationship between the NYSHRL and the duty of fair representation, the district court first observed that the duty of fair representation protects employees from discrimination, and thus that any state law that protected an employee from discrimination would be preempted. *Id.* at

9

*5. The district court then noted that "the vast majority of cases in this Circuit hold that the [duty of fair representation] preempts the [NYS]HRL in situations where the union was acting in its capacity as the plaintiff's collective bargaining representative." *Id.* (internal quotation marks omitted) (collecting cases). The district court cautioned, however, that the duty of fair representation would not preempt the NYSHRL "[w]hen a union is accused of discrimination based on actions unrelated to its role as a collective bargaining representative," such as in its role as an employer, because the duty of fair representation is not implicated when no collective bargaining representation is involved. *Id.* at *6. The district court then reviewed preemption case law and explained that, if the NYSHRL were preempted, it would have to be so based on field preemption because the "NLRA does not expressly preempt state law, nor do the parties argue that enforcement of the [NYS]HRL conflicts with federal law." *Id.*

The district court next addressed the Commissioner's two arguments against preemption: (1) that *Vaca* does not address preemption of state claims, and (2) that Title VII shows that Congress did not intend for the duty of fair representation to preempt state anti-discrimination law. *Id.* at *7. The district

court disagreed with the Commissioner's argument that *Vaca* was only about federal claims, observing that the underlying claims in that case were state law claims and that the Fifth Circuit had so found as well. *Id.* The district court was also unconvinced by the Commissioner's argument with respect to Title VII, finding that Title VII's express limitation to preserve state law anti-discrimination statutes did not mean that no federal law could preempt state law anti-discrimination statutes. *Id.* at *7-*8. Instead, the district court explained that "the synergies between Title VII and the [duty of fair representation], and between Title VII and the [NYS]HRL, do not prevent the [duty of fair representation] from preempting the [NYS]HRL." *Id.* at *10. Accordingly, the district court held that the duty of fair representation preempted the NYSHRL "to the extent that the claimed discrimination arises from acts or omissions of a labor organization acting in its role as a collective bargaining representative under the NLRA." *Id.*

The district court, however, granted the Local only declaratory and not injunctive relief. *Id.* at *10-*11. The Local had proposed a ten-step protocol whereby, essentially, all complaints filed with the SDHR against the Local would

be dismissed without investigation unless the complainant was a current, former, or potential employee of the Local. *Id.* at *10. The district court then held that the Local had not made a showing rising to the level requisite to justify a permanent injunction of that breadth, given the small expenditure of the Local's time on the filed complaints and the SDHR's interest in investigating claims filed against the Local that might involve both preempted and non-preempted claims. *Id.* at *11. The district court was also persuaded that the public interest in the "effective administrative enforcement of anti-discrimination laws" weighed against the Local's proposed permanent injunction. *Id.*

On May 13, 2016, judgment was entered granting the Local declaratory relief. The Commissioner's appeal was timely filed on June 10, 2016, and the Local's cross-appeal was timely filed on June 13, 2016.

## DISCUSSION

**I.  Preemption**

**A.  Standard of Review**

"We review *de novo* the grant of summary judgment on [a] preemption question." *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502-03 (2d Cir. 2014).

12

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**B. Analysis**

The questions before us are, first, whether to apply field preemption or conflict preemption in evaluating the alleged preemption of the NYSHRL by the duty of fair representation under the NLRA and, second, whether the NLRA's duty of fair representation preempts the NYSHRL under the applicable doctrine.

**1. Field Preemption versus Conflict Preemption**

"Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103-04 (2d Cir. 2010) (internal quotation marks omitted). "In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to

comply with both or the local law is an obstacle to the achievement of federal

objectives." *Id.* at 104 (internal quotation marks omitted).[1] The latter two are

---

[1] In addition to the three types of preemption, there are "two distinct NLRA [preemption] principles," neither of which apply to the duty of fair representation. *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613 (1986). The first is *Garmon* preemption. *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-47 (1959). *Garmon* preemption "prohibits States from regulating activity that the NLRA protects, prohibits, or arguably protects or prohibits" in order to "preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA." *Golden State Transit Corp.*, 475 U.S. at 613 (internal quotation marks omitted). *Garmon* preemption does not apply to cases involving the duty of fair representation because, as the Supreme Court explained in *Vaca*, "the desirability of leaving the development of such rules to the [National Labor Relations Board] is not applicable." 386 U.S. at 181; *see id.* at 188 ("[T]he unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements . . . render the *Garmon* pre[]emption doctrine inapplicable."); *see also Adkins v. Mireles*, 526 F.3d 531, 540, 542 (9th Cir. 2008) (holding plaintiffs' RICO claim was preempted under *Garmon* preemption, but that plaintiffs' breach of implied covenant of good faith and fair dealing claim was preempted based on its reading of *Vaca*, *not* based on *Garmon* preemption); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1166 n.3 (5th Cir. 1989) (noting that *Vaca* did not rely on *Garmon* preemption for its holding that the duty of fair representation preempted the state law claims there).

The second is *Machinists* preemption. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 148-51 (1976). *Machinists* preemption "precludes state and municipal regulation concerning conduct that Congress intended to be unregulated" in order that those areas might be "controlled by the free play of economic forces." *Golden*

forms of implied preemption. *Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31, 36 (2d Cir. 2013). We have recognized that the "two categories of implied federal preemption—field and conflict—are not rigidly distinct" although they remain independent bases for preemption. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) (internal quotation marks omitted).

"The doctrine of [preemption] in labor law has been shaped primarily by two competing interests." *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 295 (1977). "On the one hand, [the Supreme] Court has recognized that the broad powers conferred by Congress upon the National Labor Relations Board to interpret and to enforce the complex [NLRA] necessarily imply that potentially conflicting rules of law, of remedy, and of administration cannot be permitted to operate." *Id.* (internal quotation marks and

---

*State Transit Corp.*, 475 U.S. at 614 (internal quotation marks omitted). *Machinists* preemption similarly does not apply to cases involving the duty of fair representation because Congress intended conduct that falls within the duty of fair representation to be affirmatively regulated. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("The duty of fair representation is a statutory obligation under the NLRA . . . ." (internal quotation marks omitted) (citing *Vaca*, 386 U.S. at 177)).

ellipses omitted) (citing *Vaca*, 386 U.S. at 178-79). "On the other hand, because Congress has refrained from providing specific directions with respect to the scope of [preempted] state regulation, the [Supreme] Court has been unwilling to declare [preempted] all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions." *Id.* at 295-96 (internal quotation marks and ellipses omitted). Indeed, the Supreme Court has explicitly explained that the mere existence of the NLRA does not "indicate[] a congressional intent to usurp the entire field of labor-management relations." *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 501 (1984). With respect to the duty of fair representation especially, the Supreme Court explained in *Vaca* that "[a] primary justification for the [preemption] doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation." 386 U.S. at 180-81.

16

It is well established that a union has "a statutory duty fairly to represent all of th[e] employees [it represents], both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." *Id.* at 177 (citations omitted). "The duty of fair representation is a statutory obligation under the NLRA, requiring a union to serve the interests of all members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Fowlkes*, 790 F.3d at 387 (internal quotation marks and ellipses omitted) (citing *Vaca*, 386 U.S. at 177). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Id.* at 388.

The anti-discrimination roots of the duty of fair representation are long-established. As the Supreme Court explained, the "statutory duty of fair representation was developed [during the 1940s] in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act [("RLA")], and was soon extended to unions certified under the [NLRA]." *Vaca*, 386 U.S. at 177 (citations omitted).

17

The Local relies on a close reading of the Supreme Court's decision in *Vaca* to support its argument that the NLRA's duty of fair representation preempts the NYSHRL pursuant to the doctrine of field preemption. We, too, believe a close reading of *Vaca* is instructive here, although it leads us to the opposite conclusion.

*Vaca* involved an employee who brought suit against his union under Missouri state law for arbitrary and malicious failure to perform the union's duty to represent the employee in processing the employee's grievance against his former employer. Resp't's Answer Br., *Vaca v. Sipes*, 386 U.S. 171 (1967), 1966 WL 87665, at *5 (Oct. 1966). In his papers filed before the Supreme Court, the employee expressly disavowed that his complaint raised a claim of discrimination—"[t]he petition at trial level in no way pleads discrimination by an unfair labor practice"—and explained instead that his complaint raised a state law claim for breach of contract. *Id.*

The petitioner in *Vaca*, the union, argued that the Missouri state courts had lacked jurisdiction over the case because the "gravamen" of the employee's suit fell under the duty of fair representation and thus could only be brought in

18

federal court. *Vaca*, 386 U.S. at 173. The Supreme Court held that it was "obvious that [the employee's] complaint alleged a breach by the Union of a duty grounded in federal statutes, and that federal law[, rather than state law,] therefore governs his cause of action." *Id.* at 177. The Supreme Court cautioned, however, that "the unique interests served by the duty of fair representation doctrine have a profound effect . . . on the applicability of the [preemption] rule to this class of cases." *Id.* at 181-82. Although the Supreme Court concluded that the applicability of the duty of fair representation to the employee's case did not divest the state courts of jurisdiction, *id.* at 188, the Supreme Court also held that the employee had failed to prove his case under the federal law standard, *id.* at 188-89. In doing so, the Supreme Court implicitly held that the employee's state law claim for breach of contract was preempted by the duty of fair representation under the NLRA. *Id.* at 189-90.

Several of our sister Circuits have relied in part on *Vaca* in determining that the duty of fair representation preempts certain types of state law claims based on a finding of field, rather than conflict, preemption. For example, the First Circuit has held that the duty of fair representation preempts claims in tort

and contract for the breach of duties related to job safety under New Hampshire common law because "[w]ithout the collective bargaining agreement, there would be neither a local union nor a union safety committee." *Condon v. Local 2944, United Steelworkers of Am., AFL-CIO, CLC*, 683 F.2d 590, 594 (1st Cir. 1982). The First Circuit explained that the "union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" is an area in which "state law may constitute an impermissible obstacle to the accomplishment of the purposes of Congress." *Id.* at 594-95. Accordingly, the First Circuit held that "Congress ha[d] occupied the field and closed it to state regulation." *Id.* at 595 (internal quotation marks and brackets omitted).

A few years later, the Fifth Circuit held that employees' negligent breach of a common law tort duty claims against a union based on the union's failure to warn the employees that they could be replaced if they went on strike was preempted by the duty of fair representation. *Richardson*, 864 F.2d at 1169. The Fifth Circuit relied on *Vaca*, explaining that "[u]nder *Vaca*, the NLRA duty of fair representation, for the enforcement of which a federal (and state) court action is authorized, completely preempts state law because of the congressional intent

that federal law, developed to further the goals of the NLRA, entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity." *Id.*

Similarly, the Tenth Circuit held that the duty of fair representation preempted state wrongful discharge and civil conspiracy claims based on religious discrimination. *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000). As the Tenth Circuit explained, "[w]here a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations." *Id.* (citing *Vaca*, 386 U.S. at 177). The Tenth Circuit further noted that the duty of fair representation, which requires a union "to serve the interests of all members without hostility or discrimination toward any," "would certainly encompass" allegations of religious discrimination. *Id.*

At least one Circuit, however, has held that the relationship between state law and the duty of fair representation is better understood under the rubric of conflict, rather than field, preemption. In *Peterson v. Air Line Pilots Association, International*, the Fourth Circuit considered whether state law claims for

21

blacklisting, conspiracy, and interference with a contractual relationship were preempted by the RLA duty of fair representation. 759 F.2d 1161, 1162 (4th Cir. 1985). The Fourth Circuit first explained that "[p]reemption under the RLA has followed a similar tack [to that under the NLRA], but a more stringent pattern of judicial deference has emerged." *Id.* at 1168-69. In other words, "[u]nlike preemption under the NLRA, the preemption of state law claims under the RLA has been more complete." *Id.* at 1169. Ultimately, the Fourth Circuit held that "[s]ince [the employee's] state claims seek to vindicate rights largely secured by federal law, the potential conflict between remedies and administration are too great to permit the state claims to stand." *Id.* at 1171. Even when applying the more stringent RLA duty of fair representation test, however, the Fourth Circuit applied conflict preemption to determine whether the employee's state law claims were preempted rather than field preemption as the Local urges us to apply here. *Id.*

A recent Ninth Circuit decision similarly applied a conflict, rather than field, preemption analysis in evaluating the NLRA's duty of fair representation. In *Adkins v. Mireles*, the Ninth Circuit held that employees' state law claims for

breach of contract, negligent misrepresentation, and intentional infliction of emotional distress were preempted by the NLRA's duty of fair representation. 526 F.3d at 536. The Ninth Circuit explained that field preemption had not been rigidly applied in cases involving the duty of fair representation before independently analyzing each of the employees' claims. *Id.* at 539 (citing *Vaca*, 386 U.S. at 179), 540-42. Although the Ninth Circuit found each claim was preempted because the conduct underlying the claims was "inextricably linked to [the union's] performance of duties owed in their capacity as union representatives," *id.* at 541, we understand this analysis to sound in conflict preemption given the court's disavowal of the applicability of field preemption.

Most recently, the Eighth Circuit charted a new analytical course, holding, without relying on *Vaca*, that the NLRA's duty of fair representation neither occupied the entire field of discrimination and retaliation in labor relations, nor preempted a plaintiff's state-law claims based on conflict preemption. *Markham v. Wertin*, --- F.3d ----, 2017 WL 2800723, at *7 (8th Cir. June 29, 2017). The Eighth Circuit explained that any reliance on *Vaca* was misplaced, and so declined to consider the case. *Id.* Instead, the Eighth Circuit held that field preemption did

23

not apply because "Congress has not said whether and to what extent it intended [the duty of fair representation] of the NLRA to completely preempt state-law claims, nor [could the Eighth Circuit] discern from the totality of the circumstances that Congress has sought to occupy the field to the exclusion of the States." *Id.* The Eighth Circuit thus applied a conflict preemption analysis, and held that the duty of fair representation did not preempt state-law discrimination and retaliation claims because the union had failed to show "that the discrimination and retaliation claims conflict with [the duty of fair representation] or otherwise frustrate the federal scheme." *Id.*

We think it is clear from a close reading of *Vaca*, and from the other cases interpreting the duty of fair representation, that there is not the kind of total field preemption that would foreclose the NYSHRL from claims of discrimination filed by union members against a labor organization even when it is acting in its capacity as a collective bargaining agent. *Vaca* expressly disavowed a field-preemption-type analysis, and more recent Supreme Court cases have continued to caution that every provision of the NLRA does not automatically occupy the field within which its proscriptions function. *See Brown*, 468 U.S. at 501; *Vaca*, 386

24

U.S. at 180-81. We therefore disagree with the decisions of our sister First, Fifth, and Tenth Circuits to the extent that they suggest that any question of preemption by the NLRA's duty of fair representation should be evaluated under the broader doctrine of field preemption, and we believe that the Supreme Court precedent is to the contrary. We must, however, still consider whether the NLRA preempts the NYSHRL under a conflict preemption framework.

**2.      NLRA's Duty of Fair Representation and the NYSHRL**

"Under all of the[] three preemption tests—express, field, and conflict— our task is to determine whether, and to what extent, Congress intended to preempt state law." *Niagara Mohawk Power Corp.*, 673 F.3d at 95.

"We begin with the assumption that the historic police powers of the States are not to be superseded by federal law unless that is the clear and manifest purpose of Congress." *Id.* (internal quotation marks omitted); *see N.Y. SMSA Ltd. P'ship*, 612 F.3d at 104 ("Traditionally, there has been a presumption against preemption with respect to areas where states have historically exercised their police powers."). A state's passage and enforcement of laws that prohibit discrimination is an exercise of a state's historic police powers. *See Ry. Mail Ass'n*

25

*v. Corsi*, 326 U.S. 88, 97 (1945). A state has "a substantial interest" "in protecting the health and well-being of its citizens." *Farmer*, 430 U.S. at 302-03. A state's interest in eliminating discrimination is a "compelling interest" "of the highest order." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *see Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 148 (2d Cir. 2007) ("[T]here is undoubtedly a compelling interest in eradicating discrimination . . . ."). The New York statute now known as the NYSHRL has been upheld by the Supreme Court as a valid exercise of New York's police power. *Corsi*, 326 U.S. at 94 ("We see no constitutional basis for the contention that a state cannot protect workers from exclusion solely on the basis of race, color[,] or creed by an organization, functioning under the protection of the state, which holds itself out to represent the general business needs of employees.").

Since the NYSHRL falls within New York's historic police powers, we must determine whether the "clear and manifest purpose of Congress" was for the NLRA's duty of fair representation to preempt the NYSHRL. *Niagara Mohawk Power Corp.*, 673 F.3d at 95. "Congress may manifest its intent to preempt state or

26

local law explicitly . . . or implicitly, through the scope, structure, and purpose of the federal law." *N.Y. SMSA Ltd. P'ship*, 612 F.3d at 104. "Since preemption claims turn on Congress's intent, we begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013). In so doing, "we must give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme." *Niagara Mohawk Power Corp.*, 673 F.3d at 95 (internal quotation marks omitted).

There is no evidence that the NLRA's duty of fair representation was designed or intended to preempt state laws focused on combatting invidious discrimination, such as the NYSHRL. Instead, our independent review of the evidence leads us to the opposite conclusion based on the textual and structural relationships between the NLRA, Title VII, and the NYSHRL.

Congress has manifested an intent that the NLRA not preempt Title VII and other federal laws with respect to discrimination. As the Local's counsel conceded at oral argument, the NLRA's duty of fair representation is no bar to a

union member filing a discrimination claim before the EEOC. Oral Argument at 11:53-12:00, *Figueroa v. Foster*, Nos. 16-1856, 16-1864 (2d Cir. Apr. 19, 2017), http://www.ca2.uscourts.gov/oral_arguments.html. The Supreme Court recently noted that the NLRA's "unique purpose, which is to preserve the balance of power between labor and management" "is inapposite in the context of Title VII, which focuses on eradicating discrimination." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2445 n.7 (2013). A union, therefore, is subject to liability under both the NLRA's duty of fair representation and under Title VII, as well as under other federal anti-discrimination statutes enforced by the EEOC. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271-72 (2009) (explaining union is subject to liability under the NLRA's duty of representation before the National Labor Relations Board as well as under the ADEA before the EEOC).

The NYSHRL is a predecessor statute, precursor to, and model for Title VII. "New York's fair employment laws were referred to in the congressional debates by proponents of [Title VII] as an example of existing state legislation effectively combating employment discrimination." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 473 (1982), *see id* at 472-73 & n. 13. Today, NYSHRL and Title VII

28

regulate virtually the same discrimination. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014).

Congress explicitly provided in Section 708 of Title VII that "[n]othing in" Title VII "shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . . other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice" as defined in Title VII. 42 U.S.C. § 2000e-7. This explicit disavowal of preemption of state anti-discrimination laws in the text of Title VII, combined with the discussion of the NYSHRL during the enactment of Title VII, constitute evidence that "Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme" for protecting individuals from discriminatory employment practices. *Niagara Mohawk Power Corp.*, 673 F.3d at 95.

In addition, the text of Title VII also recognizes the existence and continued viability of state mechanisms for protecting individuals from discriminatory employment practices, such as the SDHR. In Sections 706(c) and (e) of Title VII, Congress explicitly recognized that certain states had established

29

"agenc[ies] with authority to grant . . . relief" from "unlawful employment practice[s]" that would also violate Title VII. 42 U.S.C. § 2000e-5(e)(1); *see* 42 U.S.C. § 2000e-5(c). Congress also stated in Section 706(d) of Title VII that the EEOC "shall . . . notify" such a state agency of a complaint filed "and, upon request, afford [the state agency] a reasonable time . . . to act under such State or local law to remedy the practice alleged." 42 U.S.C. § 2000e-5(d). Further, Congress provided in Section 705(g)(1) of Title VII that the EEOC "shall have power" to "cooperate with and, with their consent, utilize regional, State, local, and other agencies" in order to further the federal goal of combatting discrimination. 42 U.S.C. § 2000e-4(g)(1). The Supreme Court has explained that the latter of these provisions "clearly envision the establishment of some sort of worksharing agreements between the EEOC and state and local agencies" in an effort to "avoid unnecessary duplication of effort or waste of time." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 122 (1988). Congress, therefore, has not only recognized the existence of state agencies such as the SDHR, but has explicitly provided in Title VII for procedures that affirm the important

coordinate role of the SDHR and other state agencies in furthering Congress's anti-discrimination policies.

Having set forth the broader principles undergirding this Court's instant conflict preemption inquiry, the question becomes whether it is either impossible for a private party to comply with both the NLRA's duty of fair representation and the NYSHRL, or whether the NYSHRL stands as an obstacle to the execution of Congress's intent as expressed in the NLRA's duty of fair representation. *See Niagara Mohawk Power Corp.*, 673 F.3d at 95 (explaining conflict preemption occurs "where state law actually conflicts with federal law, including where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (internal quotation marks omitted)).

Regarding the impossibility branch of conflict preemption, we have explained that impossibility occurs when "state law penalizes what federal law requires, or when state law claims directly conflict with federal law." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013)

31

(internal quotation marks and citation omitted). We have explained that impossibility is a "demanding defense, and we will not easily find a conflict that overcomes the presumption against preemption." *Id.* (internal quotation marks and citation omitted).

There is no impossibility here. The Local has not argued that the NYSHRL penalizes what the duty of fair representation requires, nor has the Local argued that there is any direct conflict between the NYSHRL's requirements and the requirements of the NLRA's duty of fair representation. Although the Local suggests that the NYSHRL penalizes conduct that the duty of fair representation would not penalize, this is not a conflict cognizable under the impossibility branch of conflict preemption. "To meet its burden with respect to the impossibility branch of conflict preemption, [the Local] need[s] to demonstrate that it *could not* comply with the federal [duty of fair representation]" if it also complied with the NYSHRL. *Id.* at 100 (emphasis in original). As Title VII prohibits virtually the same discrimination as the NYSHRL prohibits, the Local will be unable to meet this burden to show impossibility. *See Matusick*, 757 F.3d

32

at 47. That the duty of fair representation provides a floor over which the NYSHRL provides a ceiling does not render the two in direct conflict.

The obstacle branch of conflict preemption, on the other hand, "precludes state law that poses an actual conflict with the overriding federal purpose and objective." *In re MTBE Prod. Liab. Litig.*, 725 F.3d at 101 (internal quotation marks omitted). "What constitutes a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* (internal quotation marks omitted). "As with the impossibility branch of conflict preemption, the purpose of Congress is the ultimate touchstone, and the conflict between state law and federal policy must be a sharp one." *Id.* (internal quotation marks and citations omitted). "The burden of establishing obstacle preemption, like that of impossibility preemption, is heavy: the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." *Id.* at 101-02 (internal quotation marks and brackets omitted). "Indeed, federal law does not preempt state law under obstacle preemption analysis unless the

repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." *Id.* at 102 (internal quotation marks omitted).

As noted above, the anti-discrimination roots of the duty of fair representation are long-established. In *Vaca*, the Supreme Court observed that the "statutory duty of fair representation was developed [in the 1940s] in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act [("RLA")], and was soon extended to unions certified under the [NLRA]." 386 U.S. at 177 (citations omitted). As this Court more recently explained, "[a] union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Fowlkes*, 790 F.3d at 388. The purpose of the duty of fair representation, therefore, can easily be said to encompass a purpose of prohibiting discrimination.

Indeed, the Local and the Commissioner agree that the NYSHRL serves the same purpose of prohibiting discrimination as does the NLRA's duty of fair representation. Each serves to reinforce the anti-discriminatory purpose of the

34

other. This mutual service is not a conflict such that the duty of fair representation and the NYSHRL "cannot be reconciled or consistently stand together." *In re MTBE Prod. Liab. Litig.*, 725 F.3d at 102. Instead, the two work in tandem to protect union members from invidious discrimination in all of its forms.

This opinion addresses only the Local's claim that the duty of fair representation preempts the NYSHRL *in its entirety* when applied to unions acting in their capacity as collective bargaining agents. We do not purport to address every potential conflict between the NYSHRL and federal law. For example, NYSHRL claims are subject to a one-year statute of limitations, *see* N.Y. Exec. Law § 297(5), whereas private duty of fair representation claims are subject to a six-month statute of limitations, *see* 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154-55 (1983), and overlapping Title VII claims filed with the SDHR are subject to a 300-day statute of limitations, *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015). We need not decide today which of these statutes of limitations applies to NYSHRL claims against unions because the present appeal does not raise facts that implicate any

such conflict. We hold only that the NYSHRL presents no potential conflict so incompatible with federal labor laws that all of its provisions must fall. We leave for other cases to resolve more specific conflicts between the NYSHRL and federal law as they arise.

Accordingly, we reverse the order of the district court granting summary judgment to the Local.

**CONCLUSION**

For the reasons set forth above, we hold that the NLRA's duty of fair representation does not preempt the NYSHRL either on the basis of field pre-emption or as a general matter on the basis of conflict preemption. We accordingly reverse the declaratory judgment of the district court and deny the Local's cross-appeal for injunctive relief.