18-2451-cv
*Whitehurst v. United Healthcare Workers East*

# In the

# United States Court of Appeals

# For the Second Circuit

August Term, 2018

Argued: March 29, 2019
Decided: June 28, 2019

Docket No. 18-2451-cv

HELEN M. WHITEHURST,

*Plaintiff-Appellant,*

v.

1199SEIU UNITED HEALTHCARE WORKERS EAST, MELISSA HAMM, STATEN
ISLAND UNIVERSITY HOSPITAL, NORTH SHORE LONG ISLAND JEWISH
HEALTH SYSTEM, GEORGE GRESHAM, President of the Service Employees
International Union,

*Defendants-Appellees.*\*

Before:     SACK, HALL, AND DRONEY, *Circuit Judges.*

Plaintiff-Appellant Helen Whitehurst, a union worker, filed a complaint in New York

state court in which she alleged that her employer and her union engaged in disability-based

---

\* We respectfully request that the Clerk of the Court amend the caption as stated above.

discrimination in violation of the New York City Human Rights Law and the New York State Human Rights Law. The defendants removed the case to the United States District Court for the Eastern District of New York (Ross, *J.*). The District Court denied Whitehurst's motion to remand, determining that her complaint arose under federal law and asserted only one plausible claim: a hybrid § 301 / duty of fair representation claim. The court then dismissed that claim as untimely.

Whitehurst now challenges that judgment, arguing that the District Court erred by construing her complaint in the way it did and, therefore, by denying her motion to remand. After reviewing the parties' arguments on appeal, we conclude that all of Whitehurst's claims are preempted by § 301 of the Labor Management Relations Act, and for that reason the District Court properly denied her motion to remand and dismissed her complaint.

The judgment of the District Court is therefore

AFFIRMED.

WILLIAM P. PERNICIARO, Law Office of William P. Perniciaro, Staten Island, NY, *for Plaintiff-Appellant.*

GENE MICAH WISSINGER, Levy Ratner, P.C., New York, NY, *for* 1199SEIU United Healthcare Workers East, George Gresham, President of the Service Employees International Union, *Defendants-Appellees.*

NICHOLAS R. BAUER (John. P. Keil, *on the brief*), Collazo Florentino & Keil LLP, New York, NY, *for* Melissa Hamm, Staten Island University Hospital, North Shore Long Island Jewish Health System, *Defendants-Appellees.*

*Per Curiam*:

Plaintiff-Appellant Helen Whitehurst appeals from a judgment of the United States District Court for the Eastern District of New York (Ross, *J.*), dismissing her complaint with prejudice. For the reasons that follow, we affirm the judgment of the District Court.

## BACKGROUND

Staten Island University Hospital ("the Hospital"), a wholly owned subsidiary of North Shore Long Island Jewish Health System, Inc. ("LIJHS"),[1] hired Whitehurst in 2007 to work as a dispatcher/emergency medical technician. In September 2014, the Hospital offered Whitehurst a different job as a telecommunications operator, which she accepted. Under the terms of the collective bargaining agreement ("CBA") between LIJHS and her union, 1199SEIU United Healthcare Workers East ("the Union"), Whitehurst was considered a probationary employee for her first 90 days in this new position. On the 10th and 11th of December 2014, Whitehurst nodded off at her work station, which her direct supervisor, Melissa Hamm, noticed on both occasions. At the end of Whitehurst's shift on the 11th, Hamm told Whitehurst that she had failed her probation due to falling asleep at her work station and would therefore be fired.

In 2012, Whitehurst had been diagnosed with severe obstructive sleep apnea syndrome, which causes "excessive somnolence." App. 15 (Complaint ¶ 23). Whitehurst did not inform the Hospital of her condition, however, until after her employment was terminated.

---

[1] Now known as Northwell Health, Inc.

3

About a month after her termination, Whitehurst, through counsel, sent a letter to the Hospital and the Union, informing them that the termination violated the terms of the CBA. She argued that although the CBA provides that "[a]ny employee who is laterally transferred shall serve the same probationary period on the new job as a new hire," it also states that if such an employee is "removed" from the new position, she will be "returned to the 'former job' if 'vacant,' or to another 'suitable job,' with no loss of seniority," and if she is "discharged," she will be subject to the discharge provisions of the CBA, which require that "cause" be shown for termination. *Id.* at 26 (quoting the CBA). Whitehurst demanded that cause be shown for her termination and asserted that "principles of progressive discipline" do not support termination "for this most minor of infractions." *Id.* Additionally, she informed the Hospital and the Union, for the first time, that her two incidents of sleepiness were caused by her sleep apnea.

Whitehurst demanded that the Union file a grievance on her behalf to annul the termination and compel the Hospital to provide her with other suitable employment. The Union at first refused to file a grievance, but ultimately it did so after Whitehurst filed an unfair labor practice complaint against the Union with the National Labor Relations Board ("NLRB"). The Hospital denied the grievance, "continu[ing] to claim Plaintiff's status was 'probationary' and thus she could be fired for any reason." *Id.* at 17 (Complaint ¶ 37). The Union refused to file for arbitration of that denial. Whitehurst appealed the Union's decision to the Union's Hearings and Appeals Board, which affirmed the decision because it determined "there is virtually no likelihood of succeeding in arbitration." *Id.* at 18 (Complaint ¶ 43). Whitehurst then filed a second complaint with the NLRB alleging that the

4

Union "engaged in a perfunctory effort with respect to the grievance and it improperly failed to pursue arbitration." *Id.* (Complaint ¶ 46). During the NLRB investigation of this complaint, the Union produced a document listing "'Sleeping on Hospital Property' as a 'Category 2' offense punishable by suspension or discharge." *Id.* at 19 (Complaint ¶ 48). The NLRB decided not to discipline the Union as "unions have discretion not to file for arbitration on behalf of a worker." *Id.* (Complaint ¶ 49).

Whitehurst then sued the Hospital, LIJHS, her direct supervisor Melissa Hamm (collectively, "the hospital defendants"), and the Union in New York state court, alleging disability-based discrimination in violation of the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"). The Union removed the case to federal court.

The District Court denied Whitehurst's motion to remand. The District Court determined that Whitehurst's claims against the hospital defendants arose under federal law because they were preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* at 72. The court construed Whitehurst's claims against the Union as a federal claim for breach of the duty of fair representation, which, "no matter how it is labeled," arises under federal law. *Id.* at 71. The court therefore ultimately construed Whitehurst's claims as a "hybrid § 301/duty of fair representation claim." *Id.* at 85. Although the District Court concluded that both sets of claims—those against the hospital defendants and those against the Union—arose under federal law, it also determined that there would be supplemental jurisdiction over either set of claims as long as there was federal question jurisdiction over the other. The District Court reasoned that these claims

5

derive from "a common nucleus of operative fact": Whitehurst's termination and inability to get her job back through the grievance process. *Id.* at 67.

Following the District Court's denial of Whitehurst's motion to remand, the defendants filed motions to dismiss, which the District Court granted. Whitehurst conceded that if the claims were construed as federal claims, then they would be untimely. And because the court had construed her claims as such in its ruling on her motion to remand, the court dismissed her claims, relying on the law of the case.

## DISCUSSION

Whitehurst does not challenge the reasoning in the District Court's order granting the motions to dismiss, having conceded that if her suit arises under federal law, it is untimely under the applicable statute of limitations. *See White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997) ("The limitations period on this 'hybrid § 301/DFR' action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation" (citation omitted)). At issue on appeal is whether the District Court correctly determined, in its order denying Whitehurst's motion to remand, that her complaint asserted a hybrid § 301 / duty of fair representation claim and no other plausible claim. Whitehurst contends that her complaint sets forth a *prima facie* case of disability discrimination under the NYSHRL and the NYCHRL, and that her suit "avoid[s] the triggering of federal jurisdiction" under the well-pleaded complaint rule and the principles governing preemption in CBA cases. Appellant Br. 9.

We review the District Court's dismissal of Whitehurst's claims under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accepting as true all factual allegations in the complaint and

6

drawing all reasonable inferences in favor of" Whitehurst. *City of Providence v. Bats Global Mkts.*, 878 F.3d 36, 48 (2d Cir. 2017). We also review *de novo* its denial of the motion to remand on the basis of preemption. *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecomms. Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir. 1998).

The complete preemption doctrine is an exception to the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 393. Complete preemption occurs when the "pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal quotation marks omitted).[2] The Supreme Court has identified only three statutes as having the requisite "preemptive force" to support complete preemption, one of which is § 301 of the LMRA. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district

---

[2] Complete preemption is distinct from ordinary or "defensive" preemption, which includes express, field, and conflict preemption. *Sullivan*, 424 F.3d at 272. Some commentators have argued that the complete preemption doctrine would be better labeled "jurisdictional" preemption. *Id.* at 272 n.5; *see also Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir. 1989) ("The use of the term 'complete preemption' is unfortunate, since the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine.").

court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 preemption serves to "ensure uniform interpretation of collective-bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988).

Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394. Thus, when resolution of a state law claim is "substantially dependent" upon or "inextricably intertwined" with analysis of the terms of a CBA, the state law claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985) (citation omitted).

When, on the other hand, a plaintiff covered by a CBA asserts "legal rights *independent* of that agreement," preemption does not occur. *Caterpillar Inc.*, 482 U.S. at 396. A state-law claim is "independent" when resolving it "does not require construing the collective-bargaining agreement." *Lingle*, 486 U.S. at 407. This rule ensures that § 301 is not "read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *see also Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232, 235 (2d Cir. 1997) (state law negligent misrepresentation claims not preempted by § 301 because they rested on independent state law rights that did not require interpretation of CBA and "[s]tate law—not the CBA—[was] the source of the rights asserted by the plaintiffs"). That a court may need to *consult* the CBA in resolving the state

8

law claim—to compute damages, for instance—does not subject that claim to preemption by § 301. *Livadas*, 512 U.S. at 125; *accord Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001) (per curiam) ("simple reference to the face of the CBA" does not require preemption). "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn*, 273 F.3d at 158.

## I. Whitehurst's Claims Against the Hospital Defendants

Whitehurst contends that her suit does not present "any need to interpret the CBA" even though "extensive reference" to the CBA will be necessary. Appellant Br. 9, 19. The hospital defendants counter that Whitehurst's "rights and entitlements" during the post-termination period—the only period at issue—"were entirely defined by the grievance process in the parties' [CBA]." Hospital Br. 12. Resolving her claim, they argue, therefore requires determining "whether she was properly classified as a probationary employee after her transfer to Telecommunications; whether she was entitled to be terminated from employment only for cause; whether sleeping on the job was an offense that warranted the application of principles of progressive discipline; and whether she was entitled to reinstatement to an alternative position." *Id.* at 12–13 (record citations omitted).

The hospital defendants have the better of the argument here: Whitehurst's claims against them are preempted by § 301. The basis for her discrimination claim against the hospital defendants is that "[t]he Hospital refused to recognize [her] disability and adhered to its decision to terminate [her] employment throughout the grievance process even though [she], and her attorney, presented documentation explaining a disability which led to [her] brief periods of [s]omnolence." App. 21 (Complaint ¶ 62). The Hospital, she alleges,

9

"continued to claim [her] status was 'probationary' and thus she could be fired for any reason" even though "it was clear to the Hospital that [she] could not simply be terminated as 'probationary' since the CBA clearly required that she, an employee of long tenure, had to be offered other 'suitable employment.'" *Id.* at 17 (Complaint ¶¶ 37–38). Crucially, then, Whitehurst only alleges discriminatory treatment occurring *after* her termination.

A court cannot adjudicate Whitehurst's claim against the Hospital, as alleged, without first determining whether Whitehurst had a right to avail herself of the grievance process—a determination which requires an interpretation of the CBA. As the District Court reasoned, if Whitehurst, pursuant to the CBA, could be fired without cause as a probationary employee and was not entitled to reinstatement, then the Hospital cannot have violated her rights by refusing to reinstate her. The NYSHRL and NYCHRL do not provide at-will employees with an independent right to a grievance process or reinstatement following a non-discriminatory termination. *See* N.Y. Exec. Law § 296(1)(a); N.Y. Admin. Code § 8-107(a); *cf. Hazen v. Hill Betts & Nash, LLP*, 936 N.Y.S.2d 164, 170–71 (1st Dep't 2012) (neither the NYSHRL nor the ADA obligates an employer retroactively to excuse misconduct when it finds out, after terminating an employee, that the misconduct was caused by his disability). If, on the other hand, the CBA granted Whitehurst the right to a grievance process or to other suitable employment due to her long tenure, then the Hospital's refusal to reinstate her despite evidence of her medical condition could be actionable. The CBA is thus the source of the rights Whitehurst seeks to vindicate, and she identifies no other "nonnegotiable rights" pertaining to the grievance process that were "conferred on [her] as a matter of state law." *Livadas*, 512 U.S. at 123. The parties fundamentally disagree regarding whether the

10

CBA should be interpreted to permit probationary employees of long tenure to be fired for any reason, such that a court must do more than "simpl[y] refer[] to the face of the CBA" in resolving this dispute. *Wynn*, 273 F.3d at 158. Resolution of the dispositive threshold question here—what post-termination rights Whitehurst had, if any—is "inextricably intertwined" with the CBA. *Allis-Chalmers,* 471 U.S. at 213.

Whitehurst's invocation of our recent decision in *Figueroa v. Foster*, 864 F.3d 222 (2d Cir. 2017), is unavailing. In *Figueroa*, a local union, in order to prevent the New York State Division of Human Rights from pursuing discrimination claims brought against the union by its members under the NYSHRL, sought a declaration that the statutory duty of fair representation, which is implied under the scheme of the National Labor Relations Act ("NLRA"), preempts the NYSHRL. *Id.* at 224. Applying a conflict preemption framework, we held that the "duty of fair representation does not necessarily preempt the NYSHRL, even when a labor organization is acting in its capacity as a collective bargaining agent," because "[t]here is no evidence that the NLRA's duty of fair representation was designed or intended to preempt state laws focused on combatting invidious discrimination, such as the NYSHRL." *Id.* at 224, 233. Whitehurst reads *Figueroa* to mean that state and federal law "now work 'in tandem to protect union members from invidious discrimination in all of its forms,'" such that we must determine "if there is something about the instant matter which presents an actual conflict with federal law." Appellant Br. 18 (quoting *Figueroa*, 864 F.3d at 235). That is far too broad a reading. *Figueroa* involved ordinary or "defensive" preemption as opposed to "complete" or "jurisdictional" preemption. It addressed the scope of preemption by the NLRA, a statute which, unlike § 301 of the LMRA, has not been

11

identified as carrying the requisite "preemptive force" to support complete preemption. *See Sullivan*, 424 F.3d at 272.

In sum, Whitehurst's claims against the hospital defendants are preempted by § 301 because they are "substantially dependent" upon analysis of the terms of the CBA. *Allis-Chalmers*, 471 U.S. at 220. Federal jurisdiction therefore exists, such that removal of her case was proper. *See Vera*, 335 F.3d at 114. The District Court correctly dismissed the § 301 claim as untimely. *See White*, 128 F.3d at 113.

## II. Whitehurst's Claims Against the Union

Whitehurst's claims against the Union are also preempted by § 301 because, like her claims against the hospital defendants, they are "substantially dependent" upon analysis of the terms of the CBA. *Allis-Chalmers*, 471 U.S. at 220.

Whitehurst's complaint alleges that the Union "engaged in discrimination by failing to pursue a course of action, that being arbitration, which left Plaintiff without a remedy to reverse a clear instance of discrimination." App. 20 (Complaint ¶ 60). The complaint supports this assertion with three factual allegations: that the Union initially "relied on a bad faith interpretation of the CBA which allowed the Hospital to terminate Plaintiff as 'probationary,'" *id.* at 21 (Complaint ¶ 64); that the Union "later relied on a document which purports to allow the Hospital to terminate workers who sleep at work, . . . fail[ing] to acknowledge the sleeping was brought about by illness," *id.* (Complaint ¶ 65); and that the Union was aware of Whitehurst's disability when it refused to arbitrate on her behalf.

Whitehurst's claims turn on interpretation of the CBA because, regardless of the Union's awareness of her disability, the Union was entitled to refuse to arbitrate on her

12

behalf if it reasonably concluded that arbitration would be futile under the terms of the CBA. *See* App. 18 (Complaint ¶¶ 41–42) (the Union's Hearings and Appeals Board affirmed the Union's decision not to arbitrate because it determined "there is virtually no likelihood of succeeding in arbitration"); *id.* at 19 (Complaint ¶ 49) (the NLRB decided not to discipline the Union as "unions have discretion not to file for arbitration on behalf of a worker"). If the Union determined that Whitehurst had no right to reinstatement or a grievance process under a good faith interpretation of the CBA, and, based on that interpretation, reasonably relied on a document allowing the Hospital to terminate workers who sleep at work, then there is no basis for Whitehurst's allegation of discrimination by the Union.

Whitehurst argues that the District Court was required to "determine what is needed to establish a prima facie case [under the NYSHRL and NYCHRL] and ignore those portions of the Complaint intended to anticipate and avoid the defenses the defendants will present." Appellant Br. 20 (citing *Caterpillar Inc.*, 482 U.S. at 393 ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.")). There would be merit to this argument if Whitehurst's complaint plausibly alleged discrimination under the NYSHRL or NYCHRL without reference to the Union's allegedly "bad faith interpretation" of the CBA. But without that allegation, Whitehurst has alleged no facts that would support an inference that the Union discriminated against her. Indeed, her entire complaint is predicated on discrimination that allegedly occurred during the grievance process, the contours of which are completely dependent on an interpretation of

13

the CBA.  To adjudicate Whitehurst's claims against the Union, then, a court would be required to interpret the CBA.  *See Allis-Chalmers*, 471 U.S. at 218 ("Because the right asserted . . . is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation.").  Whitehurst's claims against the Union are therefore preempted by § 301.

## CONCLUSION

We have considered Whitehurst's remaining arguments on appeal and find them to be without merit.  For the foregoing reasons, we AFFIRM the judgment of the District Court.